650 P.2d 825

Phil **SMITH** and Lena **Smith,**
**Plaintiffs-Appellants,**

v.

**PRICE'S CREAMERIES, a DIVISION OF CREAMLAND DAIRIES, INC., a New Mexico corporation, Defendant-Appellee.**

**No. 14117.**

Supreme Court of New Mexico.

Sept. 10, 1982.

Warren F. Reynolds, Hobbs, for plaintiffs-appellants.

Raymond W. Schowers, Sutin, Thayer & Browne, Albuquerque, for defendant-appellee.

## OPINION

DONNELLY, Judge.

Plaintiff's Phil and Lena Smith (Smiths), appeal from an order granting summary judgment against them in favor of Price's Creameries (Price's). The Smiths filed suit against appellee alleging wrongful breach of contract, misrepresentation and slander, all eminating from Price's decision to terminate a wholesale distributorship agreement entered into between the parties. We affirm.

The issues presented on appeal center upon whether the trial court erred in granting summary judgment, because (1) the termination clause in the distributorship agreement was allegedly void on grounds of unconscionability and (2) Price's termination of the contract was violative of its obligation of good faith.

The parties entered into a written contract on June 14, 1979, authorizing the Smiths to serve as a wholesale distributor of Price's dairy products within a specified area. The Smiths assert that during the negotiation of the agreement, Price's representative indicated to them that as long as they performed satisfactorily, the distributorship would continue indefinitely. Price's representatives were aware that the Smiths had paid a former distributor $72,637.80 to purchase the distributorship and equipment, and had also borrowed approximately $26,000 for working capital and additional assets to perform their duties under the agreement.

Embodied in the written agreement of the parties was the following clause: "Either party, upon thirty (30) days written notice to the other shall be entitled to terminate this AGREEMENT for any reason, but without prejudice to any rights of either party to monies due or to become due under this AGREEMENT." The contract between the parties further provided that in the event of termination, the Smiths could not compete with Price's for a period of two years within the distributorship area.

As shown in affidavits filed with the court by the respective parties incident to appellee's motion for summary judgment, the Smiths received on January 7, 1980, a thirty-day advance notice of Price's intention to terminate the distributorship.

Price's alleged that it opted to terminate the contract because of the unsatisfactory performance by Smiths; a fact avidly disputed by appellants.

Following receipt of notice of termination, the Smiths filed suit alleging that Price's breached its contract with them, and had wrongfully misrepresented the circumstances whereby the agreement could be terminated, and that representatives and agents of Price's had slandered them concerning the service and performance rendered by them under the agreement. On appeal, Smiths do not challenge the propriety of the trial court's dismissal of their claim for slander.

### I. *Unconscionability of Termination Clause.*

Smiths contend that the termination provision contained in the written agreement of the parties was unconscionable and void as a matter of law. The Smiths also assert surprise in ascertaining the specific language and far reaching consequences of the provisions of the termination clause, and that the contract between the parties unreasonably imposed a disproportionate allocation of risks upon them when balanced by the mere corresponding inconvenience which could be vested upon Price's in the event of any termination by the Smiths.

Ordinarily, in the absence of ambiguity, the construction of a contract is a question of law for the court and is treated as a matter of law. *Southwest Motel Brokers, Inc. v. Alamo Hotels, Inc.,* 72 N.M. 227, 382 P.2d 707 (1963). The determination whether a contract is ambiguous is also, necessarily a matter of law. *Young v. Thomas,* 93 N.M. 677, 604 P.2d 370 (1979). Since the contract was unambiguous, the trial court properly construed the contract of the parties upon the law.

Failing a showing of ambiguity in a contract, or evidence of fraud, where the parties are otherwise competent and free to make a choice as to the provisions of their contract, it is fundamental that the terms of contract made by the parties must gov-

ern their rights and duties. *Jim v. CIT Financial Services Corporation,* 87 N.M. 362. 533 P.2d 751 (1975); *Huey v. Lente,* 85 N.M. 585, 514 P.2d 1081, *reversed on other grounds* 85 N.M. 597, 514 P.2d 1093 (1973).

The evidence is undisputed that appellants were not rushed into signing the agreement, nor deprived of an opportunity to fully examine the terms of the contract prior to its execution, or to have an attorney selected by them to go over each of the contract's provisions. Appellant elected not to hire an attorney to advise them concerning the transaction, and there were no negotiations or attempts by appellants to change any of the provisions in the agreement prior to its execution.

At the time of the formulation of the agreement between the parties, Mr. Smith was approximately 28 years of age, had a working knowledge of the duties of a route man for a dairy products distributor, and had previous experience working with a finance company, and additionally he had worked both as an insurance salesman and as a police officer. Mr. Smith also had three and one-half years of college education. Under the circumstances no material disputed factual issue has been shown to exist concerning lack of adequate opportunity to fairly review the contract, inability to understand the provisions of the document, or lack of opportunity to seek independent professional advice regarding the terms and provisions of the agreement.

The Smiths although conceding that they were aware of both the existence and language of the termination clause, argue that they were assured prior to the execution of the agreement that the contract would continue to remain in effect as long as they performed satisfactorily under the distributorship. Even assuming the truth of this assertion, in the face of the clear wording of the rights of the parties under the termination clause, the oral statement of Price's made prior to execution of the agreement cannot be deemed to constitute fraud or misrepresentation.

The termination clause specifically set forth the right of either party to terminate the agreement upon the giving of proper notice. Generally, a party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of fraud, misrepresentation or other wrongful act of the contracting party. *Matter of Ferrara, S. p. A.,* 441 F.Supp. 778 (S.D.C.N. Y.1977); *Wyandotte Brewing Co. v. Hartford Fire Ins. Co.,* 144 Mich. 440, 108 N.W. 393 (1906). Each party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it, and if the contract is plain and unequivocal in its terms, each is ordinarily bound thereby. *Borden v. Day,* 197 Okl. 110, 168 P.2d 646 (1946).

The plain language of the termination clause indicates that either party was free to terminate the contract "for any reason." Although a contract may be declared void where it is unconscionable and oppressive in its terms, *Drink, Inc. v. Martinez,* 89 N.M. 662, 556 P.2d 348 (1976), nevertheless, the fact that some of the terms of the agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable where it was negotiated at arm's length, and absent an affirmative showing of mistake, fraud or illegality. *Schow v. Guardtone, Inc.,* 18 Utah 2d 135, 417 P.2d 643 (1966); *Hanks v. McNeil Coal Corporation,* 114 Colo. 578, 168 P.2d 256 (1946); *Zapatha v. Dairy Mart, Inc.,* 381 Mass. 284, 408 N.E.2d 1370 (1980).

Section 55–2–302, N.M.S.A.1978, is declarative of the duties of the court when a contract is determined to be unconscionable in whole or in part. This statute provides:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Whether a contract or any of its terms are unconscionable is an issue of law to be determined by the court. § 55–2–302(1), *supra.* Viewing the agreement as a whole, in light of each of Smith's contentions, we agree with the trial court, that the contract is not contrary to substantive fairness nor unconscionable in its terms.

The evidence is undisputed that the contract was freely entered into between the parties. Under these circumstances it·is not the province of the courts to alter or amend a contract made by the parties for themselves. *Owen v. Burn Const. Co.,* 90 N.M. 297, 563 P.2d 91 (1977). The courts cannot change or modify the language of a contract, otherwise legal, for the benefit of one party and to the detriment of another. *Yankee Atomic Elec. Co. v. New Mexico and Ariz.,* 632 F.2d 855 (10th Cir. 1980).

The terms of the agreement arrived at between the parties were not unconscionable or oppressive and the trial court properly determined this issue as a matter of law.

## II. *Obligation of Good Faith*

The Smiths also charge that Price's breached its obligation of dealing in good faith and in seeking to terminate the agreement. Smiths argue that under § 55–1–203, N.M.S.A.1978, every contract validly entered into between parties imposes an obligation of good faith in its performance, and that summary judgment was inappropriate because a question of fact existed as to whether Price's action in declaring the contract to be terminated was made in good faith.

■ The parties to a contract may agree to terminate an agreement upon any terms that are fair and just, and either at the option of one or both of the participants. Contractual provisions relating to termination or cancellation of an agreement not arrived at by fraud, or unconscionable conduct, will be enforced by law. *Davies v. Boyd,* 73 N.M. 85, 385 P.2d 950 (1963); *see also Santa Clara Properties Co. v. R.L.C. Inc.,* 32 Cal.Rptr. 333, 218 Cal.2d 840 (1963). Where a contract provides for a manner by which termination can be effected, those provisions must ordinarily be enforced as written. *McDonald's Corp. v. Rocky Mt. McDonald's,* 42 Colo.App. 143, 590 P.2d 519 (Ct.App.1979).

■ Appellant's argument as to whether Price's action in terminating the contract was done in good faith is not material to the issues herein. The parties were at liberty to include in the contract executed by them, a provision permitting the contract to be terminated upon the option of either party. *Davies v. Boyd, supra; compare McKay v. Farmers & Stockmens Bank of Clayton,* 92 N.M. 181, 585 P.2d 325 (Ct.App. 1978).

■ The granting of summary judgment is proper where no *material* disputed issue of fact exists. If undisputed facts will support a judgment in favor of a moving party, then summary judgment is proper as a matter of law, even though there may be a disputed factual question on other immaterial issues. *Ute Park Summer Homes Ass'n v. Maxwell Land Gr. Co.,* 77 N.M. 730, 427 P.2d 249 (1967).

Smiths' argument concerning the necessity of inquiry into Price's motives in seeking to terminate the contract, would, if followed by us, result in a construction of the termination clause contrary to the plain wording of the agreement. Instead of interpreting the clause to permit cancellation "for any reason," Smiths seek to modify this to require that termination be restricted only to instances supported by a showing of good cause.

■ As set out in *Phillips Machinery Co. v. LeBlond, Inc.,* 494 F.Supp. 318 (N.D. Okl.1980), cancellation of a distributorship is proper if undertaken in accordance with the terms of the agreement and where there is no showing of a material disputed issue of fact concerning the good faith of a party initially entering into the agreement. The motivation of a party in cancelling a contract which by its terms is terminable at will by either party, is immaterial. In the instant case, similar to the facts of *Phillips,* appellants have not alleged or made any showing that Price's lacked good faith at the time of the formulation and execution of the contract between the parties. Smiths' claims of bad faith are focused solely upon defendant's basis or lack thereof in seeking to end the contract. In *Phillips, supra,* the court held in applicable part:

It is true in this case that a fact issue remains as to the good faith of defendant in terminating the distributor agreement. The fact issue, however, is not material ... Unconscionability by the terms of § [55] –2–302 is a question of law for the Court. Since the clause involved in this case is not unconscionable as a matter of law, the question of good faith of defendant is immaterial, since it cannot affect the outcome of the litigation. Even if defendant terminated the contract in bad faith, plaintiff cannot recover .... (Id. at 325).

The trial court correctly granted summary judgment in favor of Price's. No material disputed issue of fact existed for determination by the trier of fact.

The judgment of the trial court is affirmed. Appellee is awarded its costs incident to this appeal.

IT IS SO ORDERED.

SOSA and PAYNE, JJ., concur.