749 P.2d 1105

Mitchell MELNICK, Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, State Farm Life Insurance Company, State Farm Fire and Casualty Company, State Farm General Insurance Company and Robert C. Degeer, Defendants–Appellees.

No. 16840.

Supreme Court of New Mexico.

Feb. 2, 1988.

Rehearing Denied Feb. 26, 1988.

Klecan & Santillanes, Eugene E. Klecan, Janet Santillanes, Albuquerque, for plaintiff-appellant.

Miller, Stratvert, Torgerson & Schlenker, Alan Konrad, Albuquerque, for defendants-appellees.

## OPINION

WALTERS, Justice.

Plaintiff Melnick began a State Farm Insurance Agency in Los Alamos in 1946. On May 13, 1980, State Farm Mutual Insurance Company terminated Melnick's insurance agency contract and ordered him to cease operation of his agency. Melnick requested a termination review hearing, and State Farm impaneled a review committee which recommended that Melnick's termination be upheld. The president of State Farm reviewed the committee's findings and adopted its recommendation. Melnick subsequently filed actions against State Farm and requested a jury trial.

Evidently, Melnick at one time advanced two arguments in the district court: (1) State Farm breached the agency contract in terminating the insurance agency without a showing of good cause; and (2) State Farm breached an implied covenant of good faith and fair dealing when it terminated the insurance agency. At trial, however, Melnick expressly abandoned the breach of express contract argument, and that claim is not before us. At the close of plaintiff's evidence, State Farm moved for a directed verdict on the implied covenant issue, and the trial court denied the motion. The next morning, however, the judge did direct a verdict for State Farm, entering a judgment which recited that a duty of good faith attaches to the performance of every contract, including contracts terminable-at-will, but that State Farm did not terminate Melnick's agency in bad faith. Melnick moved for a new trial; the court denied the motion, and Melnick appeals.

Melnick claims that the trial judge's reversal of her interlocutory ruling on directed verdict constituted reversible error, arguing that when she initially denied State Farm's motion, she necessarily found that reasonable minds could differ as to whether State Farm was liable for terminating in bad faith his insurance agency. Without citation to any authority, Melnick claims the trial judge could not thereafter take that issue from the jury by entering a directed verdict in favor of State Farm.

State Farm responds that no covenant of good faith and fair dealing exists or can be implied in an at-will employment relationship of indefinite duration that is defined by a wholly integrated, written contract. In the alternative, State Farm claims that even if a covenant of good faith and fair dealing is implied in an at-will employment contract, it did not terminate Melnick in bad faith. It is State Farm's position that because it was entitled to judgment as a matter of law, the trial court did not err in directing a verdict in its favor.

■ Denial of a motion for a directed verdict at the close of a plaintiff's evidence is interlocutory because it leaves the case in the trial court for further proceedings. But the trial court may revise or rescind an interlocutory order at any time before entry of a judgment that concludes the litigation. *See Barker v. Barker,* 94 N.M. 162, 165, 608 P.2d 138, 141 (1980); *State v. Doe,* 99 N.M. 460, 463, 659 P.2d 912, 915 (Ct. App.1983). A trial court may reconsider the denial of any motion for directed verdict based on legal issues raised by the motion. *Kinetics, Inc. v. El Paso Products Co.,* 99 N.M. 22, 24, 653 P.2d 522, 524 (Ct.App.1982) (upholding grant of directed verdict subsequent to jury deadlock and after twice denying such motion); *cf. Becker v. Hidalgo,* 89 N.M. 627, 629, 556 P.2d 35, 36–37 (1976) (trial court may grant summary judgment despite previous entry of pretrial order listing contested issues of

fact). It was not reversible error, therefore, for the court initially to deny State Farm's directed verdict motion and then later grant it. A trial court has the inherent authority to reconsider its interlocutory orders, and it is not the duty of the trial court to perpetuate error when it realizes it has mistakenly ruled. The focus, then, is whether a directed verdict was warranted in this case.

■ Our case law consistently has supported the proposition that if reasonable minds can differ on the conclusion to be reached under the evidence or the permissible inferences to be drawn therefrom, the question is one for the jury and it is error to direct a verdict. *E.g., Simon v. Akin,* 79 N.M. 689, 690, 448 P.2d 795, 796 (1968). Over the years, however, we have stated in at least three different ways the manner in which a court must consider a motion for a directed verdict. One line of cases has declared that in reviewing a motion for a directed verdict, a court must consider only the nonmoving party's evidence, together with all reasonable inferences which could be deduced therefrom, in a light most favorable to that party. *E.g., McGuire v. Pearson,* 78 N.M. 357, 358, 431 P.2d 735, 736 (1967).

Second, and similarly, some of our opinions state that courts must accept as true all portions of the nonmoving party's testimony and all reasonable inferences flowing therefrom which tend to prove that party's case and must disregard all conflicts and all evidence which tend to weaken or disprove it. *E.g., Simon,* 79 N.M. at 690, 448 P.2d at 796; *Simon Neustadt Family Center v. Bludworth,* 97 N.M. 500, 507, 641 P.2d 531, 538 (Ct.App.1982). This, too, could be construed to mean that courts may view only the nonmovant's evidence.

Third, later New Mexico cases have said that in reviewing a directed verdict judgment, courts must consider all evidence, insofar as the properly admitted evidence is uncontroverted, and all reasonable inferences deducible therefrom in a light most favorable to the party resisting the motion. That rule was stated by us most recently in *Skyhook Corp. v. Jasper,* 90 N.M. 143, 146, 560 P.2d 934, 937 (1977), and in *Strickland v. Roosevelt County Rural Elec. Coop.,* 94 N.M. 459, 464, 612 P.2d 689, 694 (Ct.App. 1980), *cert. denied,* 99 N.M. 358, 658 P.2d 433 (1983), and 463 U.S. 1209 (1983). Several earlier cases [1] appear to support this standard of review inasmuch as they reviewed a directed verdict motion granted at the close of all evidence, and in those cases the appellate court said that the trial judge must view "the evidence" in a light most favorable to the nonmoving party.

Oftentimes, when judges consider a directed verdict motion at the close of plaintiff's evidence, only plaintiff's evidence is available to assess. That is not always the case, however; in fact, that is not the case here. State Farm introduced evidence during its cross-examination of Melnick's witnesses. In reconciling the conflict in the scope of review standard announced in our cases, we would think it absurd to ignore uncontradicted testimony, because it may be unfavorable to the nonmovant, in ascertaining whether facts exist which might lead reasonable minds to opposing conclusions. We therefore adopt and reaffirm the better reasoned standard announced in *Skyhook,* applicable to both trial and appellate courts. *Archuleta,* 86 N.M. at 95, 519 P.2d at 1176. To the extent that other cases state a contrary standard of review, we overrule those opinions.

*Skyhook* delineates the correct standard as follows:

Neither the trial court in ruling upon a motion for a directed verdict, nor an appellate court in reviewing the evidence on appeal from a judgment entered pursuant to a directed verdict, is authorized to consider only the evidence most favorable to the party opposing the motion. All the evidence must be reviewed, but, if

---

**1.** *See Archuleta v. Pina,* 86 N.M. 94, 95, 519 P.2d 1175, 1176 (1974); *Sanchez v. Gomez,* 57 N.M. 383, 387, 259 P.2d 346, 348 (1953); *Morris v. Cartwright,* 57 N.M. 328, 332, 258 P.2d 719, 722 (1953); *Cavazos v. Geronimo Bus Lines,* 56 N.M. 624, 627, 247 P.2d 865, 866 (1952); *Sandoval v. Cortez,* 88 N.M. 170, 173–74, 538 P.2d 1192, 1195 (Ct.App.1975); *Brown v. Hall,* 80 N.M. 556, 557, 458 P.2d 808, 809 (Ct.App.), *cert. denied,* 80 N.M. 607, 458 P.2d 859 (1969).

there be conflicts or contradictions in the evidence, these conflicts must be resolved in favor of the party resisting the motion. Insofar as the properly admitted evidence is uncontroverted, it must be considered. However, if any uncontradicted evidence, including the reasonable inferences deducible therefrom, may reasonably be interpreted in different ways, then the interpretation most favorable to the resisting party must be accepted.

90 N.M. at 146, 560 P.2d at 937. *See also* Blume, *Origin and Development of the Directed Verdict*, 48 Mich.L.Rev. 555, 581 (1950) (judge must look at all evidence in considering motion for directed verdict); J. Walden, *Civil Procedure in New Mexico* § 9c(2)(a), at 225 (1973) (in deciding whether to grant directed verdict, judge may grant motion only after considering all evidence in light most favorable to nonmoving party and arriving at conclusion that evidence as matter of law is insufficient to justify verdict in party's favor). Federal courts have adopted the same standard of review for a directed verdict motion. *See* 5A J. Moore, *Moore's Federal Practice* ¶ 50.02[1], at 50–30 (2d ed. 1987) (federal appellate courts consider all evidence when reviewing directed verdict motion).

■ To announce a standard of review, however, is far simpler than to apply it. The varying nature of fact situations in each trial prohibits an outline of precise guidelines that would govern the outcome of every directed verdict motion. The principal consideration, however, is recognition that interference with the jury function must be minimized so that erosion of a litigant's right to a trial by jury is not effected. 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2524, at 545 (1971). To remove a case from the jury, it should be clear that the nonmoving party has presented no true issues of fact which that party has the right to have decided by his peers. *Sanchez*, 57 N.M. at 387, 259 P.2d at 348. If the evidence fails to present or support an issue essential to the legal sufficiency of a legally recognized and enforceable claim, the right to a jury trial disappears. *American Employers'*

*Ins. Co. v. Crawford*, 87 N.M. 375, 376, 533 P.2d 1203, 1204 (1975). The basis for a directed verdict, therefore, is the absence of an issue for the jury to resolve. *Sanchez*, 57 N.M. at 387, 259 P.2d at 348. There is no doubt that a directed verdict enhances judicial efficiency by allowing the trial judge to conclude a jury trial when the facts and inferences are so strongly and overwhelmingly in favor of the moving party that the judge believes that reasonable people could not arrive at a contrary result. *Campbell v. Mouton*, 373 So.2d 237, 238 (La.App.1979), *cert. denied*, 415 So.2d 954 (1982). But it is also a drastic measure, and the language of *Sanchez v. Gomez* is worth including here:

> [W]e wish to re-emphasize that where the evidence is as controverted as it is in the case at bar, even though, to the presiding judge, the possibility of a recovery by the plaintiff may appear remote and even though the court may be motivated in its action in directing the verdict by a sincere desire to spare the plaintiff from the further and additional expense which more prolonged proceedings may entail, the party aggrieved may not in such manner be deprived of a jury determination.

57 N.M. at 392, 259 P.2d at 351.

Professors Wright and Miller emphasize that the question is not whether literally no evidence exists to support the party against whom the motion is made, but whether evidence exists upon which a jury properly could return a verdict for that party. 9 C. Wright & A. Miller, § 2524, at 543. Professor Moore suggests that a directed verdict is proper only when it is obvious to the judge that the nonmoving party has no pretense of a prima facie case. 5A J. Moore, ¶ 50.02[1] at 50–16.1. Professor Walden observes that a directed verdict is proper only when no substantial evidence supports one or more essential elements of the nonmovant's claim. J. Walden, § 9c(3) at 235–36.

■ Applying the above considerations, we affirm the trial court's judgment entered pursuant to a directed verdict, not

because there was a complete absence of evidence of bad faith to support Melnick's claim, but because we do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship. *See Smith v. Price's Creameries, Div. of Creamland Dairies, Inc.*, 98 N.M. 541, 546, 650 P.2d 825, 830 (1982) (motivation of party in cancelling contract terminable-at-will is immaterial); *Salazar v. Furr's, Inc.*, 629 F.Supp. 1403, 1410 (D.N.M.1986) (no cause of action for breach of implied covenant of good faith and fair dealing in New Mexico). We are not inclined to redefine the law of at-will employment contracts in New Mexico.

▅▅▅ When an employment contract is not supported by any consideration other than performance of duties and payment of wages, and there is no explicit contract provision stating otherwise, it is an employment contract for an indefinite period and terminable-at-will by either party. *Sanchez v. The New Mexican*, 106 N.M. 76, 78, 738 P.2d 1321, 1323 (1987); *Vigil v. Arzola*, 102 N.M. 682, 685, 699 P.2d 613, 616 (Ct. App.1983), *modified*, 101 N.M. 687, 687 P.2d 1038 (1984); *Garza v. United Child Care, Inc.*, 88 N.M. 30, 31, 536 P.2d 1086, 1087 (Ct.App.1975). Generally, either an employee or an employer may terminate an at-will employment contract at any time, for any reason, without liability. *Sanchez*, 106 N.M. at 79, 738 P.2d at 1324; *Smith*, 98 N.M. at 546, 650 P.2d at 830; *Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 791, 635 P.2d 992, 994 (Ct.App.1981). Exceptions to this general rule are: (1) wrongful discharge in violation of public policy (retaliatory discharge); (2) implied contract that restricts the employer's power to dis-

charge; and (3) tortious or contractual breach of an implied covenant of good faith and fair dealing. We recognize the first two exceptions. *See Boudar v. E.G. & G., Inc.*, 106 N.M. 279, 283, 742 P.2d 491, 495 (1987) (addressing breach of implied employment contract and public policy tort); *Sanchez*, 106 N.M. at 78, 738 P.2d at 1323 (noting public policy, retaliatory discharge exception to employment terminable-at-will rule); *Forrester v. Parker*, 93 N.M. 781, 782, 606 P.2d 191, 192 (1980) (employer's personnel guide constituted implied employment contract).

Several jurisdictions have permitted suit for breach of an implied covenant of good faith and fair dealing in an employment contract.[2] Courts have defined "bad faith" as conduct by the employer extraneous to the employment contract aimed at frustrating the employee's enjoyment of contractual rights, *Khanna v. Microdata Corp.*, 170 Cal.App.3d 250, 262, 215 Cal.Rptr. 860, 867 (1985); *Hinson v. Cameron*, 742 P.2d 549, 553 (Okl.1987); have equated "bad faith" with fraud, deceit, or misrepresentation, *A. John Cohen Ins. v. Middlesex Ins. Co.*, 8 Mass.App. 178, 183, 392 N.E.2d 862, 864 (1979); and have acknowledged it in a termination with the intent to deprive wrongfully the employee of commissions or other benefits, or for any other wrongful or unconscionable purpose, *Fortune v. National Cash Register Co.*, 373 Mass. 96, 105, 364 N.E.2d 1251, 1257 (1977); *Dull v. Mutual of Omaha Ins. Co.*, 85 N.C.App. 310, 354 S.E.2d 752, 757 (1987).

Numerous other jurisdictions, however, as New Mexico, have refused to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in at-will employment contracts.[3] Although

---

**2.** *See, e.g., Petersen v. First Fed. Sav. & Loan Ass'n of Puerto Rico, Inc.*, 617 F.Supp. 1039, 1042 (D.V.I.1985) (recognizing cause of action for implied covenant of good faith and fair dealing in at-will employment contract); *Mitford v. De Lasala*, 666 P.2d 1000, 1007 (Alaska 1983) (same); *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 453, 168 Cal.Rptr. 722, 728 (1980) (concept of good faith and fair dealing applies to all contracts); *Albee v. Wolfeboro R.R. Co.*, 126 N.H. 176, 179, 489 A.2d 148, 151 (1985) (every contract contains implied covenant of good faith and fair dealing); *Association Group*

*Life, Inc. v. Catholic War Veterans*, 61 N.J. 150, 153, 293 A.2d 382, 384 (1972) (implied covenant of good faith and fair dealing in every contract).

**3.** *See, e.g., Goldblum v. Union Mut. Life Ins. Co.*, Nos. H–84–1675, H–84–4355, H–85–5156 (S.D. Tex.1987) (WESTLAW, Allfeds library, Dist file [1987 WL 12258] ); *Scholtes v. Signal Delivery Serv., Inc.*, 548 F.Supp. 487, 494–95 (W.D.Ark. 1982); *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1385 (Colo.App.1986); *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 377, 652 P.2d 625, 629 (1982); *Morriss v. Coleman Co.*, 241 Kan.

Arizona and Connecticut have adopted an implied covenant of good faith and fair dealing in employment at-will contracts, they have rejected the contention that a no-cause termination breaches the implied covenant. *See Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 385, 710 P.2d 1025, 1040 (1985) (covenant protects employee from discharge based on employer's desire to infringe on contractual rights such as payment of benefits earned, but does not protect discharge to avoid tenure required to earn pension or retirement benefits); *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 570–71, 479 A.2d 781, 788–89 (1984) (breach of implied covenant of good faith cannot be predicated on absence of good cause for discharge from at-will employment). *But see Gerdlund v. Electronic Dispensers Int'l*, 190 Cal.App.3d 263, 276, 235 Cal.Rptr. 279, 286 (1987) (covenant of good faith and fair dealing sometimes requires showing of good cause for termination when contract silent or ambiguous on subject).

We align also with those courts that have refused to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract.[4] We cannot change or modify the language of an otherwise legal contract for the benefit of one party and to the detriment of another.

*Smith*, 98 N.M. at 545, 650 P.2d at 829. "Contractual provisions relating to termination or cancellation of an agreement not arrived at by fraud, or unconscionable conduct, will be enforced by law. [Citations omitted.] Where a contract provides for a manner by which termination can be effected, those provisions must ordinarily be enforced as written." *Id.* at 546, 650 P.2d at 830. At least two jurisdictions have held a State Farm Insurance agency contract, similar to, if not identical with the Melnick contract, to be unambiguous and integrated, to be terminable-at-will, and not to require a showing of cause to terminate the insurance agency. *See Mooney v. State Farm Ins. Co.*, 344 F.Supp. 697, 700 (D.N.H.1972); *Scola v. State Farm Ins. Co.*, No. 1 Civ. 46985 (Cal.Ct.App.1981).

▪ The agency contract between Melnick and State Farm was fully integrated, clear, and unambiguous, and we decline to rewrite the valid agreement by imposing an obligation not found in its specific, express terminology. It recites that the contract "constitutes the sole and entire Agreement between the parties hereto," and that "[y]ou or State Farm have the right to terminate this Agreement by written notice delivered to the other * * *." Upon termination of an agency by State Farm, the

501, 517, 738 P.2d 841, 851 (1987) (implied covenant of good faith and fair dealing is overly broad and should not apply to employment at-will contracts); *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn. 1986); *Neighbors v. Kirksville College of Osteopathic Medicine*, 694 S.W.2d 822, 824, (Mo.App. 1985); *Jeffers v. Bishop Clarkson Memorial Hosp.*, 222 Neb. 829, 833, 387 N.W.2d 692, 695 (1986); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304–05, 461 N.Y.S.2d 232, 239, 448 N.E.2d 86, 89, (1983) (refusing to adopt cause of action for tortious discharge of at-will employment contract); *Hillesland v. Federal Land Bank Ass'n*, 407 N.W.2d 206, 214 (N.D. 1987); *Hinson*, 742 P.2d at 554 (same); *Jones v. Keogh*, 137 Vt. 562, 564, 409 A.2d 581, 582 (1979) (no remedy for employee at-will discharged as result of bad faith, malice, or retaliation); *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 579, 335 N.W.2d 834, 838 (1983); *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 227, 685 P.2d 1081, 1086 (1984).

**4.** *See Goldblum, supra* n. 3 (no implied covenant as to matter specifically covered by written

contract); *Borbely v. Nationwide Mut. Ins. Co.*, 547 F.Supp. 959, 975 (D.N.J.1981) (no support for proposition that implied covenant of good faith and fair dealing may impose condition in direct contravention of unequivocal provision in contract covering identical subject); *Abrahamson v. NME Hosp., Inc.*, 195 Cal.App.3d 1325, 1329, 241 Cal.Rptr. 396, 399 (1987) (refusing to engraft upon employment contract covenant of good faith and fair dealing because contract clear and unambiguous, and covenant would rewrite it); *Gerdlund*, 190 Cal.App.3d at 276, 235 Cal.Rptr. at 286 (no obligation can be implied which would overrule express right conferred in contract); *Exxon Corp. v. Atlantic Richfield Co.*, 678 S.W.2d 944, 947 (Tex.1984) (no implied covenant as to matters expressly and unambiguously covered by written contract); *Mann v. American Western Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978) (reaffirming strong reluctance to rewrite contracts for litigants because consequences of enforcement of contracts they signed seemed unfair).

agent is entitled to a termination review hearing and to termination payments. Although dissatisfied with the membership of the review panel and the presentation of charges and evidence against him, Melnick concedes that State Farm adhered to all procedures governing the termination review and made all termination payments. Having closely reviewed the entire contract, we are obliged to conclude that Melnick is entitled to nothing further. He had an agency agreement with State Farm, the agreement was for an indefinite period, and it was terminable-at-will.

This decision does no injury to the law of contracts or of employment. Parties to a contract may negotiate and bargain for provisions which are beneficial to them. A dissatisfied party to a valid contract should not be allowed to rewrite the provisions to which he initially assented. Although an employer may agree to restrict or limit his right to discharge an employee, to imply such a restriction in an employment-at-will relationship, which by its very nature has no restrictions, is inherently unsound. *Thompson,* 102 Wash.2d at 228, 685 P.2d at 1086.

Employers are entitled to be motivated by and to serve their own legitimate business interests, and they must have wide discretion and flexibility in deciding who they will employ in an uncertain business world. *Fortune,* 373 Mass. at 102, 364 N.E.2d at 1256. The employers' interests in conducting their businesses as they see fit must be balanced with the interests of their employees in keeping their jobs. *Thompson,* 102 Wash.2d at 227, 685 P.2d at 1086. But to imply in every employment situation a covenant of good faith prohibiting dismissal except for good cause could be likened to a judicial call for collective bargaining. *Magnan,* 193 Conn. at 570, 479 A.2d at 788; *Thompson,* 102 Wash.2d at 228, 685 P.2d at 1086–87. Protection of employees does not require such a restriction on an employer's discretion in managing his work force or such an imposition upon the courts. *Parnar,* 65 Haw. at 377, 652 P.2d at 629; *Brockmeyer,* 113 Wis.2d at 569, 335 N.W.2d at 838.

 Giving effect, then, to the continued vitality of the employment-at-will doctrine, we hold that in the absence of a showing of improper motivation, overreaching, or discharge for a reason contrary to public policy, Melnick was not entitled to a showing of good cause or an absence of bad faith before State Farm could terminate his agency.

Because Melnick has no cause of action for breach of implied covenant of good faith and fair dealing, and because State Farm was entitled to judgment as a matter of law, the judgment entered pursuant to a directed verdict in the district court is AFFIRMED.

IT IS SO ORDERED.

SOSA, Senior J., and STOWERS, J., concur.