This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41122

ALBERT JOHN ATKINS, III,
as Representative of DORA
MARSHALL ATKINS,

      Plaintiff-Appellant,

v.

TAOS LIVING CENTER, LLC,

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
Jeffrey A. Shannon, District Court Judge

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellant

YLAW, P.C.
Matthew L. Connelly
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**HENDERSON, Judge.**

{1}    This case arises out of a fall suffered by Dora Marshall Atkins while she was a resident at a skilled nursing facility in Taos, New Mexico, operated by Defendant Taos Living Center, LLC. Following a jury trial, Plaintiff Albert John Atkins, III, as representative of Mrs. Atkins, appeals a district court order granting Defendant's motion for a directed verdict on the issue of punitive damages and an order denying Plaintiff's

motion for prejudgment interest. Plaintiff argues that the district court erred because (1) Plaintiff presented sufficient evidence for the issue of punitive damages to be submitted to the jury based on a theory of cumulative conduct as first articulated in *Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, 118 N.M. 266, 881 P.2d 11; and (2) the court failed to consider the timeliness and reasonableness of Defendant's settlement offers, contrary to NMSA 1978, Section 56-8-4(B) (2004), in denying Plaintiff's request for prejudgment interest. We conclude that (1) Plaintiff presented sufficient evidence of Defendant's cumulative conduct for the issue of punitive damages to be submitted to the jury and (2) the district court properly considered all factors in denying Plaintiff's motion for prejudgment interest. Accordingly, we affirm in part and reverse in part.

## BACKGROUND

**{2}** At ninety-two years old, Mrs. Atkins was admitted to Defendant's skilled nursing facility, Taos Living Center (TLC), on February 21, 2014, for rehabilitation of a pelvic fracture that she incurred after falling in her home a few days before. Upon admission, she was evaluated as a "high fall risk."[1] TLC implemented a rehabilitation plan of care for Mrs. Atkins, which required that she be supplied with a "tab alarm,"[2] a "fall mat," and a "high-low bed." Additionally, Mrs. Atkins' was assigned a room that was close to the nursing station for additional monitoring.

**{3}** Almost two weeks after she was admitted, Mrs. Atkins fell in her room. After this fall, TLC reemphasized the need for fall protective measures in Mrs. Atkins' plan of care, including the use of a tab alarm, a high-low bed, and a fall mat. Mrs. Atkins fell in her room a second time four days later. When she was found, Mrs. Atkins told a nurse that she "bumped her head on the table" when she fell. The nurse noted that he found a "quarter-sized lump" on the back of Mrs. Atkins' head. However, he did not inform Mrs. Atkins' primary physician that she had hit her head. Nearly three weeks after the second fall, Mrs. Atkins was taken to the hospital at her daughter's request. At the hospital, Mrs. Atkins was diagnosed with a subdural hematoma. She was then transferred to another hospital, where she had emergency surgery to evacuate the hematoma. Mrs. Atkins brought this lawsuit in early 2017, before she died in July of that year. The case proceeded to trial in 2022. At trial, the jury awarded $550,000 to Plaintiff for Defendant's negligence.

## DISCUSSION

---

1Throughout his briefing, Plaintiff fails to provide specific citations to the record proper. *See State v. Tarver*, 2005-NMCA-030, ¶ 5, 137 N.M. 115, 108 P.3d 1 (reading Rule 12-318 NMRA to require "citation to specific pages of the record proper"); *see also* Rule 12-318(A)(3)-(4) (requiring the brief in chief to "includ[e] a summary of the facts relevant to the issues presented for review[, which] summary shall contain citations to the record proper, transcript of proceedings, or exhibits supporting each factual representation" and include "an argument . . . with citations to . . . [the] record proper"). We remind Plaintiff and his counsel that they must comply with the rules of appellate procedure. *See State v. Goss*, 1991-NMCA-003, ¶ 12, 111 N.M. 530, 807 P.2d 228.
2Defendant's elder care expert testified that a tab alarm is a small device that is intended to alert staff that a patient is moving.

**{4}**      On appeal, Plaintiff contests the district court's grant of Defendant's motion for judgment as a matter of law on the issue of punitive damages and the denial of Plaintiff's motion for prejudgment interest. We discuss each issue in turn.

## I.      Judgment as a Matter of Law on Punitive Damages

**{5}**      First, Plaintiff asserts that he presented sufficient evidence to withstand Defendant's motion for judgment as a matter of law on the issue of punitive damages. Under Rule 1-050(A) NMRA, "[j]udgment as a matter of law may be entered against a party where a reasonable jury would not have a legally sufficient evidentiary basis to find in the party's favor on an issue essential to the party's cause of action." *O'Brien v. Behles*, 2020-NMCA-032, ¶ 23, 464 P.3d 1097. "As a result, a directed verdict is appropriate only when there are no true issues of fact to be presented to a jury." *Torres v. El Paso Elec. Co., 1999-NMSC-029, ¶ 26, 127 N.M. 729, 987 P.2d 386 (alteration, internal quotation marks, and citation omitted), overruled on other grounds by Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 23 n.3, 134 N.M. 43, 73 P.3d 181.* "[W]here a court directs a verdict at the end of a plaintiff's case, the district court, as well as the reviewing court, may consider only evidence that has been admitted in the plaintiff's case-in-chief and any evidence a defendant introduced through cross-examination." *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 31, 133 N.M. 804, 70 P.3d 794. Any "conflicts or contradictions in the evidence . . . must be resolved in favor of the party resisting the motion." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 10, 106 N.M. 726, 749 P.2d 1105 (internal quotation marks and citation omitted). "[I]f any uncontradicted evidence, including the reasonable inferences deducible therefrom, may reasonably be interpreted in different ways, then the interpretation most favorable to the resisting party must be accepted." *Id.* (internal quotation marks and citation omitted). "The sufficiency of evidence presented to support a legal claim or defense is a question of law for the [district] court to decide. This Court reviews questions of law de novo." *Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 59, 143 N.M. 506, 177 P.3d 1080 (internal quotation marks and citation omitted).

**{6}**      "In order to demonstrate a basis for punitive damages that is adequate to survive a motion for [judgment as a matter of law], a plaintiff in a negligence action must introduce evidence suggesting a culpable mental state and conduct rising to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." *Torres*, 1999-NMSC-029, ¶ 27 (alteration, internal quotation marks, and citation omitted).

> Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful.

> Willful conduct is the intentional doing of an act with knowledge that harm may result.

> Reckless conduct is the intentional doing of an act with utter indifference to the consequences. When there is a high risk of danger, conduct that breaches the duty of care is more likely to demonstrate recklessness.

> Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's [rights or safety].

UJI 13-1827 NMRA. It is only necessary to introduce evidence that defendant acted with one of the relevant mental states. *See Green Tree Acceptance, Inc. v. Layton*, 1989-NMSC-006, ¶ 9, 108 N.M. 171, 769 P.2d 84 (stating that the definitions section of UJI 13-1827 NMRA describing culpable mental states giving rise to punitive damages is disjunctive). Therefore, for purposes of this opinion, we consider whether there was evidence presented that Defendant's actions were, at a minimum, wanton and reckless.

**{7}** A corporation may be liable for punitive damages based on the misconduct of its employees if at least one of the three following factors is present: "(1) corporate employees possessing managerial capacity engage in conduct warranting punitive damages; (2) the corporation authorizes, ratifies, or participates in conduct that warrants punitive damages; or (3) under certain circumstances, the cumulative effects of the conduct of corporate employees demonstrate a culpable mental state warranting punitive damages." *Sunnyland Farms v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 40, 301 P.3d 387 (internal quotation marks and citation omitted). Only the third factor, the cumulative conduct theory, is at issue in this case. *See Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 30, 150 N.M. 283, 258 P.3d 1075 ("The cumulative conduct theory provides that an award of punitive damages against a corporation may be based on the actions of the employees viewed in the aggregate in order to determine whether the employer corporation had the requisite culpable mental state because of the cumulative conduct of the employees." (alterations, internal quotation marks, and citation omitted)). A defendant may be liable for punitive damages under the cumulative conduct theory when there is evidence of a "corporate policy (or lack thereof)" that allowed "one employee [to] be ignorant of the acts or omissions of other employees with potentially disastrous consequences" and employees act, or fail to act, despite knowledge of "the risk of harm." *Clay*, 1994-NMSC-080, ¶¶ 20-22.

**{8}** Turning to the facts of this case, we conclude that Plaintiff introduced sufficient evidence of Defendant's culpable conduct such that a reasonable jury could have awarded punitive damages. Mrs. Atkins was identified as a high fall risk upon her admission to TLC. TLC's own plan of care called for TLC to implement a high-low electric bed, a tab alarm, and a floor mat as fall preventative and protective measures to address this risk. Plaintiff's elder care expert, Dr. Pinon, testified that tab alarms and fall mats were regularly used in skilled nursing units at the time of Mrs. Atkins' falls. Dr. Pinon also testified that implementation of these measures likely would have lessened the severity of Mrs. Atkins' fall.[3] At trial, the parties disputed whether these measures

---

[3]Plaintiff argues that expert witness testimony stating that Defendant's conduct was "malicious, willful[,] . . . reckless, and [in] wanton disregard for [Mrs. Atkins]" was sufficient to present the question of punitive damages to the jury. However, this testimony presents a legal conclusion, rather than a fact. Witnesses are not permitted to state an opinion on a matter of law. *See* Beal v. S. Union Gas Co., 1960-NMSC-019, ¶¶ 29-30, 66 N.M. 424, 349 P.2d 337 (concluding that expert testimony was properly stricken at trial because it is not the function of any witness, expert or nonexpert, to state an opinion on a matter of law). Thus, we do not consider this testimony in our analysis.

were implemented, and when this plan of care was created. It is undisputed, however, that TLC had a nurse check on Mrs. Atkins more frequently overnight after her first fall.

**{9}** After Mrs. Atkins' second fall, and after she had informed TLC staff that she hit her head, she continued taking blood thinners. Dr. Pinon testified that blood thinning medications can "fester a bleed," and thus Mrs. Atkins' subdural hematoma continued to grow as she continued to take these medications. She stated that, generally, medical professionals would not prescribe blood thinners for a person with a recent head injury. Dr. Pinon also testified that Defendant failed to recognize that Mrs. Atkins' deteriorating condition could have been the result of a head injury. TLC and Mrs. Atkins' daughter noticed Mrs. Atkins' worsening cognition after her second fall. Ten days after the fall, Mrs. Atkins' daughter was unable to wake her. Mrs. Atkins was only transferred to the hospital nineteen days after the fall due to her daughter's demand that she be taken for further evaluation. Once Mrs. Atkins was transferred to the hospital, she was diagnosed with both a chronic and an acute subdural hematoma, indicating that she first bled at least fifteen days before the CT scan and then bled again more recently. As a result of the subdural bleed, Mrs. Atkins underwent emergency surgery to evacuate the blood.

**{10}** Finally, Defendant did not inform all relevant parties that Mrs. Atkins had hit her head. Mrs. Atkins' primary physician was not informed that she had suffered a head injury. In an earlier deposition, the physician testified that, had she been told about the injury, she would have had Mrs. Atkins transferred to the hospital for a CT scan. Moreover, Mrs. Atkins' eldest daughter testified that she was told that Mrs. Atkins had not hit her head, though TLC staff told Mrs. Atkins' husband that she had sustained a head injury. The daughter, like Mrs. Atkins' primary physician, testified that, had she been informed that Mrs. Atkins had hit her head, she would have asked TLC to obtain a CT scan.

**{11}** Viewing the foregoing facts in the aggregate, *see Grassie*, 2011-NMCA-024, ¶ 30, and resolving all conflicts and contradictions in Plaintiff's favor, *see Melnick*, 1988-NMSC-012, ¶ 10, we conclude that Plaintiff presented sufficient evidence that Defendant's cumulative actions were wanton and reckless such that the question of punitive damages should have gone to the jury. Plaintiff presented evidence that Defendant failed to implement several of the fall prevention and protection measures that it included in Mrs. Atkins' plan of care. Following Mrs. Atkins' second fall, in which Plaintiff contended she suffered a subdural hematoma, Defendant failed to inform her daughter and her primary physician that she had suffered a head injury. Defendant also failed to recognize Mrs. Atkins' decline in cognitive abilities and failed to stop her from taking blood thinners, even though she had suffered a head injury. Finally, Defendant failed to transfer Mrs. Atkins to the hospital for further evaluation; instead, she was only transferred based on her daughter's insistence. This evidence demonstrates Defendant's employees' inaction despite their knowledge of "the risk of harm." *Clay*, 1994-NMSC-080, ¶ 22. A reasonable jury could have found for Plaintiff on the issue of punitive damages. Accordingly, we reverse the district court's grant of Defendant's motion for judgment as a matter of law.

## II.      Prejudgment Interest

**{12}**     Next, Plaintiff argues that the district court abused its discretion when denying Plaintiff's request for prejudgment interest because (1) the court failed to consider all relevant factors[4] and (2) the court erroneously attributed delays in litigation caused by the COVID-19 pandemic to Plaintiff. We disagree.

**{13}**     Section 56-8-4(B), states:

> [T]he court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering, among other things:
>
>          (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
>
>          (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

"The [district] court is not required to make specific factual findings when denying prejudgment interest under Section 56-8-4(B)." *Sunnyland Farms, Inc.*, 2013-NMSC-017, ¶ 61. Instead, "[t]he court's reasons for denying prejudgment interest need only be ascertainable from the record and not contrary to logic or reason." *Id.* (internal quotation marks and citation omitted). "The [district] court may also consider equitable considerations not stated in Section 56-8-4(B) if they further the statute's goals of fostering settlement and preventing delay." *Id.* (alterations, internal quotation marks, and citation omitted). "The decision whether or not to award prejudgment interest is within the discretion of the trial court, and we review only for abuse of that discretion." *Id.* ¶ 60.

**{14}**     Following trial, Plaintiff sought prejudgment interest pursuant to Section 56-8-4(B). In its written order, the district court denied Plaintiff's motion, finding that "Plaintiff unreasonably delayed the adjudication of [P]laintiff's claims for the reasons articulated by the [c]ourt on the record at the [hearing on Plaintiff's motion]." At the hearing, the district court reasoned that the unreasonable delays in the case were attributable to Plaintiff because (1) the case was dismissed for lack of prosecution in February 2018 and (2) Plaintiff failed to prepare a scheduling order.

**{15}**     We do not agree that the record establishes that the district court failed to consider the relevant factor identified in Section 56-8-4(B)(2). Contrary to Plaintiff's assertions, the district court was not required to provide a written or oral explanation

---

4Although Plaintiff asserts that the parties presented "other issues and factors" that the district court should have relied on in rendering its decision, Plaintiff fails to identify those "other issues and factors" on appeal. "[This Court] will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Moreover, "[t]his Court has no duty to review an argument that is not adequately developed." *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701. Thus, we will not address this facet of Plaintiff's argument.

with findings of fact when denying prejudgment interest. *See Sunnyland Farms, Inc.*, 2013-NMSC-017, ¶ 61 ("The [district] court is not required to make specific factual findings when denying prejudgment interest under Section 56-8-4(B)."). Moreover, it is evident from the record that the district court reviewed the parties' briefing on the issue of prejudgment interest, which included argument regarding the reasonableness of the parties' relevant settlement offers and demands. Additionally, both parties provided oral argument about settlement offers at a hearing on the motion. The parties had different opinions as to the strengths of Plaintiff's case and the value of a reasonable settlement. Throughout the course of litigation, TLC conveyed three settlement offers, the highest offer being for $100,000.25. Plaintiff's lowest settlement demand was $2,250,000. While TLC's highest settlement offer was much lower than the $550,000 in compensatory damages that the jury awarded Plaintiff, Plaintiff's lowest settlement demand was significantly higher than the jury award. Given the parties' differing opinions on punitive damages, and the significant disparity in the amount of their respective settlement offers, the district court did not abuse its discretion in not weighing the second factor in favor of either party. *Cf. id.* ¶ 62 (noting that difficult legal issues resulting in a genuine difference of opinion on the strength of the plaintiff's case can contribute to legitimate delays in settlement, and affirming the district court's denial of prejudgment interest). In light of the record before us, we will not presume that the district court failed to consider the relevant factors or the parties' arguments that came before the court for review even though the district court did not explicitly address all of the relevant factors in its oral ruling. *See generally Robertson v. Carmel Builders Real Est.*, 2004-NMCA-056, ¶ 25, 135 N.M. 641, 92 P.3d 653 ("[W]e will not presume error."); *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). Thus, Plaintiff has failed to demonstrate that the district court erred.

**{16}** Second, the district court did not abuse its discretion in finding that Plaintiff caused unreasonable delay by failing to submit a scheduling order. Plaintiff argues that it was the parties' joint responsibility to submit a scheduling order and that any delay in submitting an order was reasonable. However, after the district court held a scheduling conference in May 2020, neither party submitted a scheduling order. Plaintiff did not request another scheduling conference until June 2021. The district court conducted a scheduling conference in December 2021, but Plaintiff did not submit a scheduling order to the court until sometime in April or May 2022. While the district court did not order either party to submit the scheduling order,[5] it was Plaintiff's duty to keep his case moving forward. *See, e.g., Emmco Ins. Co. v. Walker*, 1953-NMSC-074, ¶ 4, 57 N.M. 525, 260 P.2d 172 ("The duty rests upon the plaintiff at every stage of the proceeding to use diligence and to expedite [their] case to a final determination."). Moreover, to the extent Plaintiff claims Defendant contributed to the delay, Plaintiff does not assert that he requested a presentment hearing or submitted a proposed scheduling order in response to a lack of response or cooperation from Defendant. *See State ex rel. Reynolds v. Molybdenum Corp. of Am.*, 1972-NMSC-027, ¶¶ 23-24, 83 N.M. 690, 496 P.2d 1086 (stating that the opposing party is responsible for delay only where it

---

5Contrary to Defendant's assertion, we find no indication in the record that Plaintiff was ordered by the district court to submit a scheduling order.

interfered with or thwarted the plaintiff's efforts), *superseded by rule on other grounds as stated in Rodriguez ex rel. Rodarte v. Sanchez*, 2019-NMCA-065, 451 P.3d 105. Plaintiff also argues that it was reasonable to not submit a scheduling order after the May 2020 scheduling conference "because of the ongoing [COVID-19] pandemic and the questions about whether New Mexico courts would even conduct jury trials in the midst of the pandemic."[6] However, in reviewing the May 2020 scheduling conference, it is clear that a November 2020 or February 2021 trial setting was contemplated by the court and the parties. Plaintiff does not indicate any evidence that the court and the parties agreed to not pursue those trial dates, nor does Plaintiff explain why he did not seek another scheduling conference until June 2021. Therefore, we are unconvinced that this years-long delay was reasonable.

**{17}**   In light of the foregoing, we conclude that the district court did not abuse its discretion in denying Plaintiff's motion for prejudgment interest.

**CONCLUSION**

**{18}**   Based on the foregoing, we affirm the district court's denial of Plaintiff's motion for prejudgment interest and reverse the court's order granting Defendant's motion for a directed verdict on the issue of punitive damages, and remand for proceedings consistent with this opinion.

**{19}   IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**

---

[6]Despite Plaintiff's assertion that the district court failed to explain how a jury trial could have commenced during the COVID-19 pandemic, the district court stated that, "in March of 2020 . . . the [New Mexico] Supreme Court basically stopped all jury trials and all jury trials were put on hold . . . . But at no time was the court shut down. We were open for business throughout the entire pandemic. So the pandemic created a delay for jury trials." The court further clarified that other issues and pretrial motions could have been handled during the pandemic.