525 P.2d 387

**Anthony F. MONNIN, Plaintiff-Appellee,**

v.

**Bob WOOD, Gerry Wood, and Father John Conway, Defendants-Appellants.**

**No. 1244.**

Court of Appeals of New Mexico.
July 17, 1974.

Thomas F. McKenna, Albuquerque, for defendants-appellants.

William F. Aldridge, Albuquerque, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendants appeal from a judgment awarding plaintiff compensatory damages for alleged libel per se. We reverse.

Defendants submitted five contentions for review. We reverse because defendants were entitled to a directed verdict. The written letter involved was not libelous per se.

A. *Facts.*

Plaintiff was a volunteer teacher of the fifth grade class in the St. Bernadette Religious Education Program, also known as Confraternity of Christian Doctrine (C.C. D.). Defendants Wood, husband and wife, were the lay coordinators of the program and defendant Father Conway was the spiritual moderator.

Defendants were in charge of overall supervision and conduct of the program. This included selecting the text to be used in class, the hiring and dismissing of teachers, and keeping the parents informed of the program in progress and any changes. The Sadlier Series was the authorized text. The Baltimore Catechism was not.

Plaintiff was chosen to teach in February, 1970. He was furnished the Sadlier Series and the Old Testament as the subject matter of the sixth grade. He taught the remainder of the 1970 school year which ended in May, 1971.

Beginning September, 1971, plaintiff taught the fifth grade and was furnished the Sadlier Series. The subject matter for the fifth grade was the Sacraments covered by the Sadlier Series. There was no discussion between plaintiff and defendants about the use of a teaching guide. Plaintiff was told what materials to use in teaching but he was not told what not to use. To place another text in the children's hands was not in keeping with the program. Plaintiff introduced the Baltimore Catechism, and used this text in teaching the fifth grade.

On October 2, 1971, plaintiff was dismissed as a teacher and did not contest this dismissal. On the day of dismissal, plaintiff told defendant Father Conway that plaintiff was going to try to organize a group of parents to remove the coordinators from the program. To accomplish this plan, plaintiff began calling several parents of children in his class. He talked to some teachers. He told the parents that he had been fired, that he used the Baltimore Catechism, that he disapproved many of the procedures or happenings in the C. C.D. program, that the parents' children should be taken out of the program, and that he would and did remove his children.

This action of plaintiff stirred up trouble in the relationship of the parents with the coordinators and with the religious education program. The defendants, after a conference, because of the problem raised by plaintiff, decided to write the letter about plaintiff's dismissal to the parents.

On October 9, 1971, one week after plaintiff's dismissal, the defendants signed the letter and issued it to the students in plaintiff's former class to be taken home to their parents. The reason for the letter was to explain why plaintiff was dismissed. Plaintiff did not think defendants Wood were trying to get even with him or do him harm. He did not think there was malice on the part of defendant Father Conway.

The letter reads as follows:

Dear Parents: Re: a) Distribution of texts other than those decided upon our CCD Program
b) Dismissal of teacher

As most of you know, for several years, the trend in Religious Education, just as in other educational areas, has been away from question and answer type learning. Furthermore, there has been a gradual development in the last decade in the area of catechetics . . . the Salvation History or Biblical approach was the first thrust forward . . . since then, developments in psychology have resulted in far more consideration in regard to the readiness of the child, and it is felt that force-feeding is not only useless, but at times damaging to children. Writers of modern texts take all these things into consideration.

We have done our best to keep you informed of the "why's and wherefore's" of modern approaches in catechetics, and we feel that, therefore, it must have been very confusing to you to have your children come home with the "Baltimore Catechism," which is under severe criticism by the experts for failing to take the above-mentioned things into consideration. While we feel that this may have caused some confusion on your part, we are even more deeply concerned in regard to the confusion that could have been caused on the part of your children. After having discussed this matter with our Spritual [sic] Moderator, we arrived at the decision that we had no choice but to dismiss a teacher who knowingly would have taken such a measure upon himself. Our teachers [sic] manuals stress the point that "If a

teaching staff does not operate as a team, it's no use". Great damage can be done to the children if we're pulling in two directions. We feel very strongly about this, and have done everything within our power through meetings, etc., to establish communications with all of our teachers in an effort to work as a team. We cannot afford to have the program jeopardized because of such tactics.

We are grateful for having had this matter called to our attention, and we want to take this opportunity to urge parents to feel free to discuss matters which might be questionable with us, as well as other things you might have on your mind regarding our program.

> Bob and Gerry Wood
> CCD Coordinators
> s/ Bob & Gerry Wood
> Father John Conway
> Spiritual Moderator of CCD
> s/ Father John Conway

B. *The letter was not libelous per se.*

Is the above letter libel per se? The answer is "No."

 To be libelous per se, the letter alone, without any reference to extrinsic facts, stripped of all insinuations, innuendos and explanatory circumstances, must tend to render the plaintiff contemptible or ridiculous in public estimation, or expose him to public hatred, contempt or disgrace. The language said to be libelous is to be given its plain and natural meaning and to be viewed by this court as people reading it would ordinarily understand and give it meaning, without knowledge or use of any special facts or circumstances. The language must be susceptible of but a single meaning, and a defamatory meaning must be the only one of which the writing is susceptible. McGaw v. Webster, 79 N.M. 104, 440 P.2d 296 (1968); Chase v. New Mexico Pub. Co., 53 N.M. 145, 203 P.2d 594 (1949). Defamatory character will not be given the words unless this is their plain and obvious import, and the language

will receive an innocent interpretation where fairly susceptible to it. Perea v. First State Bank, 84 N.M. 326, 503 P.2d 150 (Ct.App.1972).

The only portion of the letter which plaintiff can claim was defamatory relates to dismissal of a teacher who brought the "Baltimore Catechism" in the classroom with which to teach children which jeopardized the religious education program of C.C.D.

We find nothing opprobrious or defamatory in the letter as a matter of law. McGaw v. Webster, supra; Hoeck v. Tiedebohl, 74 N.M. 146, 391 P.2d 651 (1964); Del Rico v. New Mexican, 56 N.M. 538, 246 P.2d 206 (1952); Chase v. New Mexico Pub. Co., supra; Perea v. First State Bank, supra. Compare, Stewart v. Ging, 64 N.M. 270, 327 P.2d 333 (1958), which involved an ordained travelling preacher.

Defendants were entitled to a directed verdict.

Reversed with directions to enter judgment for defendants.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.