1998-NMCA-016

953 P.2d 304

**Victoria L. LOPEZ, Plaintiff–Appellant,**

v.

**Lawrence KLINE and Herbert M. Denish & Associates, Inc., Defendants–Appellees.**

**No. 17668.**

Court of Appeals of New Mexico.

Nov. 26, 1997.

Certiorari Denied Jan. 15, 1998.

Peter H. Johnstone, Law Office of Peter H. Johnstone, P.C., Albuquerque, for Plaintiff–Appellant.

Gail Stewart, Gallagher, Casados & Mann, P.C., Albuquerque, for Defendants–Appellees.

## OPINION

DONNELLY, Judge.

1. On appeal, Plaintiff challenges the trial court's award of summary judgment dismissing her suit alleging breach of an express or implied contract of employment, breach of an express and implied contract to provide neutral references to prospective employers, and that Lawrence Kline and Herbert M. Denish & Associates, Inc. (Defendant), made statements which were defamatory. We affirm in part and reverse in part.

*FACTS AND PROCEDURAL POSTURE*

2. Plaintiff was initially employed as a part-time executive assistant by Defendant, a planning and consulting firm in Albuquerque, New Mexico. In June 1989 she became a full-time employee with the firm. Approximately five months later, she was diagnosed as having a brain tumor. Shortly thereafter Plaintiff spoke with Mr. Herbert Denish and told him that the doctors recommended that she be promptly operated on to remove the tumor. She asked to be permitted to go on medical leave.

3. Plaintiff's affidavit in opposition to Defendant's motion for summary judgment, stated that after Denish was advised of Plaintiff's illness, he told her she could take off as much time as she needed to "take care of [her] medical condition," and that she should not "worry about losing [her] job ... [and that her] job would be there when [she] returned from the medical leave." It is undisputed that Plaintiff was placed on medical leave effective January 1, 1990.

4. In February 1990 Plaintiff met with Denish and told him she wanted to return to work. Plaintiff's affidavit recites that he told her to "take care of [her] health problems first, and then come back to work," and that he told her "not to worry about [her] job." Two months later, in April 1990, Plaintiff made an appointment to talk about returning to work. Defendant cancelled the appointment and then rescheduled it. On April 20, 1990, before the parties met for a rescheduled appointment, Plaintiff received a letter from Denish advising her that her employment had been terminated effective April 12, 1990.

5. Following her termination, Plaintiff applied for a position with the American Federation of Government Employees (A.F.G.E.) and listed Defendant as a reference. On August 6, 1990, Gloria Johnson, a representative of A.F.G.E., called Defendant for a reference and spoke to Mr. Lawrence Kline, employee and officer of Defendant corporation. According to an affidavit of Johnson, submitted in opposition to the motion to dismiss, Kline responded to this inquiry, saying: " 'Oh, is she still alive and well?' ", and " '[s]he was sick [and] had lots of medical problems.' " Kline also said, " '[s]he went on extended leave. The insurance company told us that she was a high risk and advised us to terminate her. That's the reason we fired her.' " Johnson also stated that Kline told her that Plaintiff had been " 'an excellent employee and had leadership potential.' "

6. Plaintiff filed suit on August 6, 1993, against Defendant. The trial court consolidated this cause with another case filed by Plaintiff against Qual–Med. Qual–Med is not a party to this appeal. Defendant filed a motion for summary judgment on April 1, 1996. Following a hearing, the trial court granted summary judgment on both counts.

*DISCUSSION*

7. Plaintiff asserts that the trial court erred in granting summary judgment on her claim of breach of a contract of employment and her separate claim of defamation.

8. Summary judgment is appropriate only upon a showing by the moving party that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Ciup v. Chevron U.S.A., Inc.*, 1996 NMSC 062, ¶ 7, 122 N.M. 537, 928 P.2d 263. A party opposing summary judgment is to be given the benefit of all reasonable doubts in determining whether a genuine issue of material fact exists, and all

reasonable inferences are to be construed in favor of the opposing party. *See Sarracino v. Martinez*, 117 N.M. 193, 194, 870 P.2d 155, 156 (Ct.App.1994). A fact is material if such fact may affect the outcome of the case. *See Parker v. E.I. Du Pont de Nemours & Co.*, 1995 NMCA 173, 121 N.M. 120, 124, 909 P.2d 1, 5. Where a genuine controversy is found to exist as to a material issue of fact, summary judgment is inappropriate and the matter should be resolved at a trial on the merits. *See Lexington Ins. Co. v. Rummel*, 1997 NMSC 043, ¶ 15, 123 N.M. 774, 945 P.2d 992.

9. Applying this familiar appellate standard of review, we first examine Plaintiff's claim of breach of contract of employment. Plaintiff's complaint alleged, among other things, that Defendant breached an implied contract not to discharge her. Defendant's motion for summary judgment asserted that it had a legal right to terminate Plaintiff's employment without cause because Plaintiff was an employee at will. The motion for summary judgment was accompanied by a copy of portions of Defendant's personnel manual,[1] excerpts from depositions of Plaintiff, answers to interrogatories sent to Plaintiff, and both an affidavit and deposition of Johnson, the representative of A.F.G.E. who had called Defendant seeking information about Plaintiff.[2] In response to Defendant's motion, Plaintiff relied upon both her own affidavit and deposition, Johnson's affidavit and deposition, and Defendant's personnel manual.

10. Both parties recognize that New Mexico follows the general rule that employment contracts supported by no consideration other than the performance of duties and payment of salary are employment agreements for an indefinite period and are terminable at will by either the employer or the employee, absent an express agreement specifying the terms of such employment. *See Garrity v. Overland Sheepskin Co.*, 1996 NMSC 032, ¶ 10, 121 N.M. 710, 917 P.2d 1382; *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 672, 857 P.2d 776, 783 (1993). An employment agreement for an indefinite period is presumed to be terminable at will unless the parties have otherwise agreed. *See Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 426, 773 P.2d 1231, 1233 (1989); *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 24–26, 766 P.2d 280, 284–86 (1988). An at-will employer-employee relationship is subject to termination at any time, with or without cause. *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 730, 749 P.2d 1105, 1109 (1988).

11. New Mexico courts recognize two exceptions to the foregoing rule, namely, that an employer may be liable in damages to an employee, on public policy grounds, for a wrongful termination under facts disclosing unlawful retaliatory discharge or where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge. *See Hartbarger*, 115 N.M. at 668, 857 P.2d at 779; *Melnick*, 106 N.M. at 730, 749 P.2d at 1109.

12. Whether an at-will employer-employee relationship has been modified constitutes a factual issue. *See Hartbarger*, 115 N.M. at 669, 857 P.2d at 780; *Stieber v. Journal Publ'g Co.*, 120 N.M. 270, 272, 901 P.2d 201, 203 (Ct.App.1995). In order to support a finding that the employer has made a promise that modifies an employee's employment contract, the fact finder must examine the totality of the circumstances surrounding the employment relationship. *Newberry*, 108 N.M. at 427, 773 P.2d at 1234; *Kestenbaum*, 108 N.M. at 26, 766 P.2d at 286. Where a plaintiff presents evidence of a promise sufficient to support an implied contract, consideration for the implied contract will be implied as a matter of law by the

---

1. The personnel manual recited in part that "[e]mployment with Herbert M. Denish & Associates, Inc., is at-will, which means your employment can be terminated with or without cause, and without notice, at any time. Likewise, you may resign your position with us for any reason at any time, with or without notice. This manual does not constitute an expressed or implied contract."

2. Defendant's motion for summary judgment assumed for the purposes of such motion that Kline said that Plaintiff had been sick a lot, took off a lot of time from work, and "that the health insurance company told the firm to terminate" Plaintiff.

court. *See Hartbarger*, 115 N.M. at 670, 857 P.2d at 781. The terms of the implied contract must be sufficiently explicit. *See Garrity*, 1996 NMSC 032, ¶ 10, 121 N.M. 710, 917 P.2d 1382.

13. In *Sanderson v. First Security Leasing Co.*, 844 P.2d 303 (Utah 1992), the Utah Supreme Court considered a case factually similar to the case at bar. In that case, the plaintiff, Sanderson, worked for First Security Leasing Company as a vice president and member of the senior management committee. In December 1988 he was reassigned to another position. Shortly thereafter, Sanderson became ill. Due to concern about his job, Sanderson notified the company president of his illness and kept him apprised of his condition. Sanderson testified that the company president told him to " 'take all the time ... needed, do what need[s] to [be] done,' " and when you are " 'ready to come back the job [will] be there.' " *Id.* at 305. Several months later, Sanderson was told he would have to accept a demotion or be terminated. Sanderson was subsequently terminated. According to company records, Sanderson was involuntarily terminated for unsatisfactory performance. *Id.*

14. Sanderson subsequently filed suit for wrongful termination alleging his employer violated both the terms of an employment manual and an express oral agreement limiting the basis for dismissal from employment. On appeal, the Utah Supreme Court reversed in part the trial court's award of summary judgment and held:

> [Employer's] argument assumes that oral statements can rebut the at-will presumption only if they specify a period of employment or create a just-cause standard for dismissal. We disagree. At-will employment is a bundle of different privileges, any or all of which an employer can surrender through an oral agreement. In addition to a promise for a specified employment term or a for-cause requirement for termination, an employer can, for example, agree to use a certain procedure for firing employees or promise not to fire employees for a certain reason, thereby modifying the employee's at-will status.

> The latter example—a promise not to fire for a certain reason—illustrates the situation in the present case. Taking the facts in the light most favorable to Sanderson, as we must, we agree that if [the company president] made the alleged statements, Sanderson may have had an implied-in-fact contract with [Employer]. Sanderson was concerned that his absenteeism would cost him his job. To allay his fears, ... his supervisor [who was] also the president of the company, assured him that he should take all the time he needed to recover from his illness. If the situation unfolded as Sanderson has described it and if the statements were clear and unequivocal, a reasonable jury could find that they modified the express at-will terms of the employee manual regarding causes for discharge and constituted an explicit, enforceable term not to fire Sanderson because of his illness-induced absenteeism.

*Id.* at 307 (citation omitted).

15. The *Sanderson* Court held that a reasonable jury could find that the statements made by the company president concerning Sanderson's continued employment "were neither vague encouragement nor hyperbolic optimism because they conveyed [Employers'] clear and unequivocal intention to relinquish his right to fire Sanderson because he had missed so much work." *Id.* In rendering this decision, the court held that interpreting the facts in a light most favorable to the plaintiff, Sanderson's employer "did not promise that he would fire [him] only for cause or only for good cause. He promised merely that he would not fire Sanderson for being unable to work because of his current illness. He retained his at-will prerogative to fire Sanderson at any time for any *other* reason." *Id.* The court in *Sanderson* also concluded that a factual issue existed as to whether Sanderson was fired for absenteeism, in breach of his alleged, implied-in-fact employment contract, thus necessitating remand to determine whether his employer made the statements in question and the actual reason for the termination. The court further noted that if the employer "fired Sanderson for absenteeism, in breach of his implied-in-fact employment contract, ...

Sanderson may be entitled to contract damages.... " *Id.*

16. Applying the rationale discussed by the court in *Sanderson* to the case before us, we conclude that the trial court erred in granting summary judgment on Plaintiff's claim of breach of an oral, implied-in-fact contract not to terminate Plaintiff because of her illness. We emphasize that here, as in *Sanderson,* Plaintiff made a sufficient showing of the existence of an implied contract not to terminate her because of her illness to withstand Defendant's motion for summary judgment. Thus, Plaintiff was entitled to have this factual issue resolved by the fact finder at a trial on the merits. Nothing in the record, however, indicates that Defendant agreed not to terminate Plaintiff for any other reason.

17. We next examine Plaintiff's assertion that the trial court erred in granting summary judgment on her claim of defamation. Defendant denies that the purported statements made by Kline to Johnson were slanderous. Defendant also argues that Plaintiff has failed to show that the statements in question, even if made by Kline, were untrue, and that Plaintiff has failed to show any actual damages resulting from such statements.

18. Plaintiff's amended complaint alleged that Kline, in his capacity as an employee and officer of Defendant corporation, made statements to at least one prospective employer, saying, among other things, that "[P]laintiff had a lot of medical problems and that she was a 'high risk' employee." Plaintiff also alleged these statements were "untrue and defamatory and were willfully and maliciously made."

19. Defendant's motion for summary judgment set forth as uncontradicted facts that Plaintiff was notified on November 22, 1989, "that she had a brain tumor and would need further medical consultation and/or treatment," and that she was on leave between Thanksgiving 1989 and April 12, 1990, when she was terminated. Plaintiff did not controvert these facts. Under the circumstances presented here, Plaintiff has failed to show that the alleged statements were de-famatory or that she was damaged thereby. *See Monnin v. Wood,* 86 N.M. 460, 462, 525 P.2d 387, 389 (Ct.App.1974) ("Defamatory character will not be given the words unless this is their plain and obvious import, and the language will receive an innocent interpretation where [words are] fairly susceptible to it."); *see also Poorbaugh v. Mullen,* 99 N.M. 11, 20–21, 653 P.2d 511, 520–21 (Ct.App.1982) (proof of defamation requires, inter alia, proof of actual damages).

20. Plaintiff also failed to show that her failure in being hired by A.F.G.E. was proximately caused by the statements made by Kline to Johnson by telephone. Proximate cause is an element of defamation. Under this posture, the trial court properly granted Defendant's motion for summary judgment on Plaintiff's claim of slander.

## CONCLUSION

21. We reverse that portion of the trial court's order granting summary judgment on Plaintiff's claim that Defendant breached an oral, implied agreement not to terminate her because of her illness-induced absence from work. We affirm the trial court's award of summary judgment on Plaintiff's claim of defamation. The parties shall bear their own costs on appeal.

22. **IT IS SO ORDERED.**

APODACA, J., concurs.

ARMIJO, J., specially concurring.

ARMIJO, Judge, specially concurring.

23. I concur in the result. However, I do not join in the analysis to the extent it suggests that Defendants would not breach an implied contract not to fire Plaintiff for reasons relating to her illness or medical leave if they terminated her employment for "any other reason." As this Court noted in *Maxwell v. Ross Hyden Motors, Inc.* ., 104 N.M. 470, 472, 722 P.2d 1192, 1194 (Ct.App.1986), "[t]he rule that an employee is terminable at-will, either without cause or for a specific reason, has undergone substantial erosion." Because there are disputed issues of material fact concerning the existence and scope of an implied contract, I would not reach the question of whether or not Defendants breached

that contract. It is for the trier of fact to determine whether there exists such a contract and to define its terms.

24. Moreover, the evidence which accompanies Defendants' motion for summary judgment does not show that there were any reasons for terminating Plaintiff's employment which are unrelated to her illness or medical leave. In this respect, this case is distinguishable from *Sanderson v. First Security Leasing Co.*, 844 P.2d 303 (Utah 1992). In *Sanderson*, the employer presented evidence that the stated reason for the employee's termination was " '[u]nsatisfactory performance,' " and that the employee's illness and sick leave occurred at the same time that a company audit revealed numerous problems in the department he was assigned to manage. *Id.* at 304-05. Thus, the Utah court was in a better position to rule on the employer's contention that, even if there was an implied contract not to use illness or sick leave as a basis for termination, the employee could still be fired for unsatisfactory performance without breaching that contract. Where there is no showing in the record before us of such an alternative basis for Plaintiff's termination, however, I do not believe this Court is in a position to draw any conclusions with respect to any legal effect that an alternative basis for termination might have.