# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 25, 2016

**NO. 34,493**

**MB OIL LTD., CO.,**

      Plaintiff-Appellee,

v.

**THE CITY OF ALBUQUERQUE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Michael L. Danoff & Associates, P.C.
Michael L. Danoff
Brett J. Danoff
Albuquerque, NM

for Appellee

SaucedoChavez P.C.
Christopher T. Saucedo
Albuquerque, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

City of Albuquerque
Robert I. Waldman, Assistant City Attorney
Albuquerque, NM

for Appellant

# OPINION

**VANZI, Judge.**

{1}     The City of Albuquerque (the City) appeals from a judgment awarding nearly four million dollars in anticipatory profits for the wrongful termination of a supply contract (Contract) that was expressly terminable for cause or convenience. Because we conclude as a matter of law that the contract was not wrongfully terminated, we reverse and remand for entry of judgment in favor of the City.

## BACKGROUND

{2}     The following factual background is derived from the district court's findings of fact, to which we generally defer, *see State v. Munoz*, 1998-NMCA-140, ¶ 14, 125 N.M. 765, 965 P.2d 349, and from the terms of the Contract itself, which we can interpret as well as the district court. *See Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶ 12, 139 N.M. 274, 131 P.3d 661 ("In the absence of ambiguity, the interpretation of language in a contract is an issue of law which we review de novo.").

{3}     MB Oil Ltd., Co. (Plaintiff) is a wholesale fuel distributor that contracted with the City to be the primary supplier of certain fuels to the City's Fleet Management Division. The Contract provided that the quantities of fuel to be delivered would vary depending on the City's needs. During the contract period, Plaintiff would treat the City as a "preferred customer," delivering requested fuel within twelve hours of any

order and always assigning first priority to the City's requirements. In exchange, the City would treat Plaintiff as its primary fuel supplier, ordering from Plaintiff first at prices agreed upon in the Contract before turning to secondary and tertiary suppliers in the event Plaintiff could not meet the City's needs.

{4}     Section 26 of the request for bids, which was later merged into the Contract, gave the City the right to terminate the agreement for default, after giving notice to cure, if Plaintiff failed to fulfill its delivery obligations "in a timely and proper manner[.]" Immediately following the termination for default clause, Section 27 then provided an alternative basis for termination, which is the subject of this Opinion:

> Termination for the Convenience of the City:
>
> The City may terminate [the C]ontract . . . at any time by giving at least thirty (30) days' notice in writing of such termination to [Plaintiff]. In such event, [Plaintiff] shall be paid under the terms of the [C]ontract for all goods/services provided to and accepted by the City, if ordered or accepted by the City prior to the effective date of termination.

A termination for convenience clause is generally understood to be a risk-allocating tool, intended to permit a government to "terminate a contract, even in the absence of fault or breach by the other party, without incurring the usual financial consequences of breach." *Mark Dunning Indus. v. Cheney*, 934 F.2d 266, 267 n.1 (11th Cir. 1991) (per curiam) (internal quotation marks and citation omitted). It has become a standard term in federal procurement contracts. *See Krygoski Constr. Co.*

*v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996); *see also* 48 C.F.R. § 49.502 (2007) (noting the types of contracts that utilize a termination for convenience by the government clause). Like other municipalities—and even some private parties—the City has apparently taken the federal government's lead and begun including the clause in its own contracts. *See, e.g.*, *Old Colony Constr., LLC v. Town of Southington*, 113 A.3d 406, 408 n.1 (Conn. 2015); *Vila & Son Landscaping Corp. v. Posen Constr., Inc.*, 99 So. 3d 563, 566-68 (Fla. Dist. Ct. App. 2012). It does so because, as the Director for Finance and Administration for the City of Albuquerque testified at trial, the City needs to be able to cancel its contracts if operational reasons require it to change course.

{5}     Plaintiff submitted its bid in October 2009—its first time bidding on a city contract. An exhibit admitted at trial indicates that it offered to charge the City a paltry delivery price of $148,660.46 compared to the second lowest bidder, which proposed a price nearly six times higher. Not surprisingly, the City ultimately awarded the primary supply Contract to Plaintiff, and Plaintiff began performing in March 2010.

{6}     There were then various occasions throughout the summer of 2010 where Plaintiff was unable to timely deliver fuel or unable to deliver fuel at all due to what the district court later concluded was a lack of availability of fuel to deliver. The

district court also concluded that in each of the instances when fuel was unavailable to Plaintiff, the City was forced to turn to its backup vendors to provide the fuel. It is thus apparent that the fuel that was unavailable to Plaintiff was in fact available to other suppliers, including the City's backup vendors.

{7}     On multiple occasions, beginning in July 2010, the City notified Plaintiff in writing that fuel requirements were not being met. Specifically, a letter dated July 12, 2010, informed Plaintiff that it was in default. That letter also stated that Plaintiff had been unable to provide unleaded fuel to the City for a month. And a second letter, dated August 31, 2010, explained that Plaintiff's failure to provide fuel when ordered "creates problems for the City and is in violation of the [C]ontract requirements." The City finally terminated the contract for default and/or convenience on September 9, 2010, citing Plaintiff's failure to "provid[e] fuel within the delivery time requirements of the [C]ontract, i.e., within [twelve] hours of order placement[.]" The cancellation letter also noted that Plaintiff made partial deliveries, and "on several occasions," actually refused to provide fuel.

{8}     Plaintiff filed suit alleging various tort claims that have since been dismissed and leaving two contract claims that went to trial. Count I's breach of contract claim essentially alleged a bait-and-switch scheme: that the City's request for bids misrepresented the amounts and types of fuel the City would order to the detriment

4

of vendors who relied on those estimates in formulating their bids. Of particular importance was the City's failure to accurately estimate requirements of E85 (85% ethanol-blended fuel), which was the basis for Plaintiff's profit margin in the Contract. To Plaintiff's detriment, the City "cancell[ed]" all orders of that fuel type early in the Contract term.

{9}     Count IV similarly alleged only that the City "breached the covenant of good faith and fair dealing by knowingly and intentionally breaching the contractual agreements with [Plaintiff]." All told, the Complaint was directed at the City's alleged conduct in soliciting bids and making untimely payments and such—behavior that Plaintiff alleged caused it various damages.

{10}     Following a bench trial, the district court entered its findings and conclusions ruling in favor of Plaintiff and awarded substantial damages. Liability was not premised on the complaint's bait-and-switch allegations, its late payments theory, or on the alleged cancellation of E85. Instead, the district court concluded that the City wrongfully terminated the Contract for default because the failed and untimely deliveries did not constitute a substantial impairment to the City's benefits under the Contract, and also wrongfully terminated it for convenience, since Plaintiff showed "an absence of valid grounds for invocation of the termination for convenience clause." The court awarded costs plus $378,672.23 in "preparatory damages" and

$3,805,840.46 in anticipatory profits "arising directly from the [C]ontract." The City appealed, and we now reverse the district court.

**DISCUSSION**

{11}     The district court in this case found it "difficult to evaluate the City's invocation of the termination for convenience clause" because "[n]either the September 9, 2010 letter nor the evidence at trial specifically identify any 'convenience' other than perhaps the grounds identified for invocation of" the clause allowing termination for default. The court then concluded, for this reason, that Plaintiff carried its burden of persuasion by showing the absence of "persuasive facts" to support the City's right to terminate the Contract for convenience.

{12}     But the City was not required to have any good cause or persuasive reason for terminating the Contract. The plain wording of Section 27 allowed the City to unilaterally invoke the clause for its convenience at any time by giving at least thirty days' notice in writing to Plaintiff.

{13}     A clause that allows a party to terminate a contract for convenience, as opposed to default, is typically treated as a provision allowing termination "without cause[,]" *Harris Corp. v. Giesting & Assocs.*, 297 F.3d 1270, 1273 (11th Cir. 2002), which is the functional equivalent of an agreement for an indefinite period, terminable at will. *See Lopez v. Kline*, 1998-NMCA-016, ¶ 10, 124 N.M. 539, 953 P.2d 304 ("An at-will

6

employer-employee relationship is subject to termination at any time, with or without cause."). Clauses of this sort are not limited to employment relationships; they have been applied according to their terms in cases, like this one, that are governed by the Uniform Commercial Code. *See, e.g.*, *Smith v. Price's Creameries, Div. of Creamland Dairies, Inc.*, 1982-NMSC-102, ¶¶ 13-23, 98 N.M. 541, 650 P.2d 825.

{14}    For example, the termination clause in *Smith* allowed either party to terminate a wholesale distributorship "for any reason" by giving proper notice. *Id.* ¶¶ 4, 14. When the defendant terminated the contract because of alleged unsatisfactory performance by the plaintiffs, the plaintiffs—avidly disputing that their performance was unsatisfactory—sued the defendant for wrongful termination. *Id.* ¶¶ 5-6. The Supreme Court held on appeal that it was immaterial whether the plaintiffs' performance was factually unsatisfactory. *Id.* ¶ 23. The plaintiffs' attempt to restrict termination "only to instances supported by a showing of good cause" would have simply read the termination clause out of the contract, resulting in a construction contrary to the plain wording of the agreement. *Id.*

{15}    This is not a novel concept. It is an outgrowth of the unremarkable obligation of courts to enforce the bargained-for terms of a contract as written. *Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 17, 106 N.M. 726, 749 P.2d 1105. Parties are free to negotiate for provisions that are beneficial to them, and "[a]

dissatisfied party to a valid contract should not be allowed to rewrite the provisions to which he initially assented." *Id.* ¶ 19. Thus, "[c]ontractual provisions relating to termination or cancellation of an agreement not arrived at by fraud, or unconscionable conduct, will be enforced by law." *Smith*, 1982-NMSC-102, ¶ 20.

{16} At a glance, a clause that provides only one party the right to terminate for convenience might seem unfair, or even illusory. At-will employment is generally terminable by either party, *see Melnick*, 1988-NMSC-012, ¶ 14, and so was the distributorship in *Smith*—a fact that was noted by the Supreme Court in its unconscionability analysis in that case. *See Smith*, 1982-NMSC-102, ¶¶ 13-14. Only the City had the right to terminate for convenience in this case.

{17} But there are good reasons to allow the government to include a nonmutual termination for convenience clause in its supply contracts. First, the practice has been expressly authorized by our Legislature. NMSA 1978, § 13-1-170(A)(6) (1997) ("A . . . local public body . . . may require by regulation that contracts include uniform clauses providing for . . . termination of the contract in whole or in part for the convenience of the . . . local public body[.]"). We presume that the City, having been allowed to mandate inclusion of the clause (by regulation) in all of its contracts, can also selectively include it in this one.

8

{18} Second, the City is a municipality contracting for the benefit of its citizens. The flexibility provided by a termination for convenience clause allows it to limit expenditures without binding successor governments to contractual obligations that are not in the best interests of the citizenry. *See Maxima Corp. v. United States*, 847 F.2d 1549, 1552 (Fed. Cir. 1988) ("One of the few exceptions to the common law requisite mutuality of contract is that here at issue."). A newly elected mayor might decide that city vehicles should switch to cleaner, alternative fuels that are not available to its existing wholesale supplier. Conversely, the mayor could decide that those fuels are too costly and prioritize instead the supply of cheaper fuels for the city's fleet. If the current supplier cannot meet increased demands for unleaded fuel resulting from the change in policy, the city may reasonably need to terminate the contract with notice in order to find a supplier that can meet its needs.

{19} That latter example basically summarizes this case. On April 23, 2010, Albuquerque's Chief Administrative Officer—an officer of the new administration—directed the City's fleet management to convert its fleet from E85 and B20 (20% biodiesel) to unleaded gasoline and 5% biodiesel fuel, which were perceived to be "the most cost effective fuel[s] based on the combination of price and efficiency." The district court found that Plaintiff never refused to deliver the unleaded fuel, but that on at least twenty-seven occasions from June through August

2010, Plaintiff advised the City that the fuel was unavailable or that deliveries would be late. After giving Plaintiff notice that delivery requirements were not being met, the City terminated the Contract for cause and convenience, citing Plaintiff's failure to "provid[e] fuel within the delivery time requirements of the [C]ontract[.]"

{20}     Termination for convenience clauses in government contracts are designed precisely to apply to these circumstances. *See, e.g.*, *Nesbitt v. United States*, 345 F.2d 583, 586 n.3 (Ct. Cl. 1965). In *Nesbitt*, the United States Court of Claims noted that a supplier's inability to meet the government's increasing demands in a requirements contract would "undoubtedly" give the government power under the termination clause "to terminate the plaintiff's full rights, in order to be free to place orders with other suppliers." *Id.* The only difference here is that the City is a municipality. But, like the federal government, the City is authorized by the Legislature to include termination for convenience clauses in its contracts, *see* § 13-1-170(A)(6), and having bargained for such a clause, its constituent taxpayers should not be saddled with millions of dollars in damages for a supplier's anticipatory profits simply because the government's needs have changed. To the extent Plaintiff argues that termination was wrongful because the City was not operating in the best interests of the taxpayers, that argument is not well taken. *See generally Planning & Design Sols. v. City of Santa*

10

*Fe*, 1994-NMSC-112, ¶ 5, 118 N.M. 707, 885 P.2d 628 ("[W]e will not substitute judicial discretion for municipal administrative discretion.").

{21} The federal courts do, however, recognize some limitations on the government's ability to terminate its contracts at will. These limitations are designed to ensure that government contracts with nonmutual termination for convenience clauses are not illusory. *See Torncello v. United States*, 681 F.2d 756, 769 (Ct. Cl. 1982) ("It is hornbook law . . . that a route of complete escape vitiates any other consideration furnished and is incompatible with the existence of a contract."). Two competing standards have arisen.

{22} The first only requires that the government does not abuse its discretion or act in bad faith. *Krygoski Constr. Co.*, 94 F.3d at 1543 ("In the absence of bad faith or clear abuse of discretion the contracting officer's election to terminate is conclusive." (internal quotation marks and citation omitted)). A termination for convenience causes a contract breach only when a plaintiff can show "well-nigh irrefragable proof" that the government did not terminate the contract in good faith. *Kalvar Corp. v. United States*, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976) (internal quotation marks and citation omitted). This narrow standard would presumably be met if a plaintiff showed that the contracting officer was (1) motivated by malice, *Gadsden v. United States*, 78 F. Supp. 126, 128 (Ct. Cl. 1948); (2) involved in a conspiracy to get rid of

11

the plaintiff, *Knotts v. United States*, 121 F. Supp. 630, 636 (Ct. Cl. 1954); (3) sought only to secure a better bargain from a competing supplier in a requirements contract, *Torncello*, 681 F.2d at 772; or (4) never intended to keep its promise when the promise was made, *Krygoski Constr. Co.*, 94 F.3d at 1545.

{23}     The second standard is a "changed circumstances" test announced by a plurality of the United States Court of Claims in *Torncello*, 681 F.2d at 771 ("[W]e restrict the availability of the clause to situations where the circumstances of the bargain or the expectations of the parties have changed sufficiently that the clause serves only to allocate risk."). The changed circumstances test has since been abandoned by the federal courts, *see Krygoski Constr. Co.*, 94 F.3d at 1545, but two state courts have nevertheless adopted it in cases the district court relied upon when it authored its conclusions of law below. *See Ry-Tan Constr., Inc. v. Wash. Elementary Sch. Dist. No. 6*, 93 P.3d 1095, 1112 (Ariz. Ct. App. 2004), *vacated on other grounds by* 111 P.3d 1019, 1024 (Ariz. 2005) (en banc); *Ram Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 587 (Ky. 2003).

{24}     We need not flesh out these competing standards in any greater detail. The City was entitled, under any standard, to terminate the Contract in this case because the district court found that Plaintiff was unable to meet the City's increasing demands for unleaded fuel in a requirements contract. *See Nesbitt*, 345 F.2d at 586 n.3. That

12

is a circumstance that probably justified termination for default, though the district court concluded otherwise. It is certainly a "changed circumstance" and an inconvenience to the City, which contracted and paid to be a preferred customer entitled to the reliable delivery of fuel within twelve hours of its request. *See Torncello*, 681 F.2d at 771.

{25}     That the Contract contemplated secondary and tertiary fuel suppliers does not mean that the City expected to rely on those suppliers for the entire summer of 2010. Nor does the district court's finding that Plaintiff never affirmatively refused to deliver fuel mean that the City's expectations under the Contract were met. The City's trucks cannot run on Plaintiff's good intentions and, certainly from the City's perspective, there is little appreciable difference between Plaintiff's wilful refusal to deliver fuel and its frequent inability to timely deliver it. That is obvious from the Contract itself, which expressly provided for cancellation in the event Plaintiff failed to deliver fuel in a "timely and proper manner[.]"

{26}     As such, termination pursuant to Section 27 was neither a breach of the Contract nor a breach of the covenant of good faith and fair dealing. *Melnick*, 1988-NMSC-012, ¶ 17 ("We align . . . with those courts that have refused to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract."); *see Santa Fe Custom*

13

*Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 44, 137 N.M. 524, 113 P.3d 347 ("The implied duty of good faith does not confer on a district court a roving commission to do whatever it[] wishes in the name of fairness." (internal quotation marks and citation omitted)). Since these were the only bases for liability, we reverse for the district court to enter judgment in favor of the City. Of course, the City is responsible for any damages contemplated in the text of Section 27 itself, if those amounts have not yet been paid.

**CONCLUSION**

{27}	The judgment of the district court is reversed.

{28}	**IT IS SO ORDERED.**


_____
						**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**RODERICK T. KENNEDY, Judge**

14