872 P.2d 852

**Lisa BOURGEOUS, Plaintiff–Appellant,**

v.

**HORIZON HEALTHCARE CORPORATION, David Rodriguez, and Steve R. Wolf, Defendants–Appellees.**

**No. 21173.**

Supreme Court of New Mexico.

March 29, 1994.

Rehearing Denied April 13, 1994.

Sommer, Fox, Udall, Othmer & Hardwick, P.A., Jack N. Hardwick, Santa Fe, for appellant.

Simons, Cuddy & Friedman, Karen C. Kennedy, Albuquerque, for appellees.

## OPINION

FRANCHINI, Justice.

Lisa Bourgeous filed suit against Horizon Healthcare Corporation (Horizon), David Rodriguez, and Steve Wolf to recover compensatory and punitive damages for wrongful termination of employment. Bourgeous asserted retaliatory discharge and civil conspiracy claims against Horizon, Rodriguez, and Wolf, jointly and severally, and asserted breach of contract and breach of good faith and fair dealing claims against Horizon. The conspiracy claim was dismissed.

The trial court granted Horizon's motion for directed verdict on the breach of a covenant of good faith and fair dealing claim, the retaliatory discharge claims against Rodriguez, the administrator of Casa Rael, a nursing home owned and operated by Horizon, and Wolf, Horizon's district director, and the claim for punitive damages. The trial court

submitted the issues of breach of an employment contract and the retaliatory discharge claim against Horizon to a jury. The jury found in favor of Bourgeous on her breach of employment contract claim and against Bourgeous on her retaliatory discharge claim. The jury awarded damages of $2,500 for economic loss and $63,500 for emotional distress. The trial court entered judgment against Horizon on Bourgeous's breach of employment contract claim for $2,500, plus prejudgment interest and costs. The trial court did not enter judgment on the damages for emotional distress. Bourgeous raises six issues on appeal. We affirm the trial court on all issues, but take this opportunity to discuss the applicability of the covenant of good faith and fair dealing to an employment contract.

## I.

Horizon owns two facilities in Santa Fe. The first is known as Horizon Healthcare Nursing Center. The second, which Horizon acquired in January 1991, is known as Casa Rael. Bourgeous was hired as a skilled nursing coordinator for the Horizon Healthcare Nursing Center on April 22, 1991. As a new employee, Bourgeous was subject to a 90–day probationary period, during which time she could be terminated for unsatisfactory job performance. Shortly after Horizon purchased the Casa Rael facility, the director of nursing at the facility died. In May 1991, Bourgeous applied for and was given the director of nursing position at Horizon's Casa Rael facility. Under Horizon's employment policies, Bourgeous began a new 90–day probationary period when she assumed the director of nursing position at the Casa Rael facility.

At the time Bourgeous was hired as the director of nursing at Casa Rael, she expressed interest in the position of medical consultant. Ralph Gonzales, an employee at Horizon, and David Rodriguez, the administrator of the Casa Rael facility, advised Bourgeous that, at that time, all of the medical consultants had previously been directors of nursing. Bourgeous testified that Gonzales and Rodriguez told her they would train her for the consultant position and

make it available for her. Gonzales and Rodriguez denied making such statements.

Bourgeous was assigned the responsibility for implementing Horizon's policies and procedures at the Casa Rael facility. The testimony on both her job performance and whether Horizon was properly staffing the Casa Rael facility was conflicting. Various Horizon employees testified that Bourgeous was unable to grasp her job duties and work with other staff members. They also testified that the facility was always adequately staffed. Bourgeous testified that she was not given adequate training or support and that the facility was understaffed. In particular, Bourgeous stated that nonlicensed aids were performing physical therapy. She believed that this practice was contrary to medicare regulations and New Mexico physical therapy licensing laws. Several Horizon employees testified that medicare regulations and New Mexico licensing laws permit nonlicensed aids to perform duties delegated to them by a licensed physical therapist and that none of the activities being performed at Casa Rael were illegal.

On July 15, 1991, Rodriguez met with Wolf, Gonzales, and Steve Mitchell, a vice-president of Horizon. At the meeting a decision was made to terminate Bourgeous. Bourgeous testified that on the same day she met separately with Wolf and when she asked him about her job performance he told her she was "doing fine."

The following day Rodriguez summoned Bourgeous into his office and informed her that Horizon had directed him to ask her to tender her resignation. Bourgeous did not tender her resignation and left the facility in the middle of her shift. By letter, Rodriguez advised Bourgeous that she had been terminated effective July 16, during her probationary period, and that the progressive discipline system set forth in the Horizon personnel manual did not apply. At trial the parties stipulated that there was a contract of employment between them. Under Policy No. 207 of the personnel manual, Horizon could discharge an employee during the probationary period "for unsatisfactory performance or behavior, or because of staffing cutbacks." Bourgeous testified that none of

her supervisors had ever told her that her progress was not satisfactory or that she was doing something that could result in her termination.

After Bourgeous's employment was terminated, she subsequently worked as a nurse for three different employers, St. Vincent Hospital, Indian Health Services, and Espanola Hospital. Bourgeous resigned from her position at St. Vincent Hospital and went to work for Indian Health Services. She was terminated from that employment and thereafter went to work at Espanola Hospital. Subsequently, she was terminated from Espanola Hospital.

## II.

Bourgeous requests a new trial on the grounds that the trial court erred by (1) directing a verdict on the retaliatory discharge claims against Rodriguez and Wolf, (2) directing a verdict on Bourgeous's punitive damages claim, (3) directing a verdict on the breach of covenant of good faith and fair dealing claim, (4) dismissing any claims for economic loss, (5) refusing to award damages for emotional distress resulting from breach of contract, and (6) excluding evidence of a romantic relationship. Horizon requests us to set aside the prejudgment rate of interest if we reverse the judgment.

■ On appeal from the grant or denial of a motion for a directed verdict, we view the evidence in the light most favorable to the nonmoving party and indulge every reasonable inference to support it, ignoring conflicts in the evidence unfavorable to that party. *C.E. Alexander & Sons v. DEC Int'l Inc.*, 112 N.M. 89, 93, 811 P.2d 899, 903 (1991). "If the evidence fails to present or support an issue essential to the legal sufficiency of a legally recognized and enforceable claim, the right to a jury trial disappears." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 729, 749 P.2d 1105, 1108 (1988), *cert. denied*, 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988).

■ Bourgeous sued Rodriguez and Wolf individually for the tort of retaliatory discharge. Critical to establishing this cause of action is a showing that the employer violated a clear mandate of public policy by discharging an employee. *See Shovelin v. Central N.M. Elec. Coop.*, 115 N.M. 293, 303, 850 P.2d 996, 1006 (1993). If Bourgeous was employed by Horizon, only Horizon could discharge Bourgeous, not Rodriguez and Wolf. A corporation can act only through its officers and employees, and any act or omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation. *See* SCRA 1986, 13–409 (Repl. Pamp.1991). It is undisputed that the decision to hire and fire personnel for Horizon in this action rested with Rodriguez and Wolf. Yet, the discharge of Bourgeous was within the scope and duties of Rodriguez's and Wolf's employment. Thus, it is difficult to see how a retaliatory discharge cause of action would apply to the individual defendants acting in the course and scope of their employment as employees of Horizon. Bourgeous did not contend that Rodriguez's and Wolf's actions were outside their scope of employment. The claims against the individual defendants were solely claims based on actions taken within the scope of their employment.

■ We are mindful that officers or employees of corporations can be held personally liable when they commit intentional torts. *See Bass v. Happy Rest, Inc.*, 507 N.W.2d 317, 320 (S.D.1993). Thus, for example, if Bourgeous had presented evidence of malicious, willful, or wanton conduct, she might have had a claim against the individual defendants for intentional infliction of emotional distress. *See generally Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct.App.), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984); *Dominguez v. Stone*, 97 N.M. 211, 214–15, 638 P.2d 423, 426–27 (Ct.App.1981). We leave open the question whether a retaliatory discharge claim lies against a supervisor, agent, or coemployee if the firing was an intentional act done solely for the supervisor, agent, or coemployee's own interest and therefore outside the scope of employment. *Compare Morton v. Hartigan*, 145 Ill.App.3d 417, 99 Ill.Dec. 424, 427, 495 N.E.2d 1159, 1162 (1986) (holding that discharged employee could not bring a retaliatory discharge claim against his supervisor because his em-

ployer was the proper defendant) *and Proctor v. Caudill*, 820 P.2d 1353, 1356 (Okla.Ct. App.) (same), *cert. denied*, 820 P.2d 1353 (1991) *with Fellhauer v. City of Geneva*, 190 Ill.App.3d 592, 137 Ill.Dec. 846, 851–52, 546 N.E.2d 791, 796–97 (1989) (holding that retaliatory discharge claim could be brought against supervisor, coemployee, or agent of employer), *appeal granted*, 129 Ill.2d 563, 140 Ill.Dec. 670, 550 N.E.2d 555 (1990), *rev'd on other grounds*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991). Here, there was no evidence in the record that either of the individual defendants acted outside the course and scope of their employment, nor was there any evidence of malicious, willful, or wanton conduct.

### III.

■ We next address Bourgeous's contention that the trial court erred in directing a verdict against her on her punitive damages claim. Punitive damages are allowable in a case involving breach of an employment contract only where there is a showing of bad faith during the course of the plaintiff's employment or in the manner and method used to terminate the employee. *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 432, 773 P.2d 1231, 1239 (1989). Mere breach of an employment contract does not, itself, create a right to recover punitive damages, even if the breach is deliberate. *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 9, 791 P.2d 452, 460 (1990). To support an award of punitive damages, there must be evidence of a culpable mental state. *Id.*

Here, there was no substantial evidence of any culpable mental state on the part of any of the defendants. Bourgeous contends that the following evidence raises an inference sufficient to support a claim for punitive damages: that she complained about the practices at the facility, that she was terminated just prior to the end of the first of her two probationary periods, that Horizon derived revenues from ancillary services, and that the defendant Rodriguez was friends with one of the physical therapy aids—raises an inference sufficient to support a claim for punitive damages. We disagree. This evidence was sufficient to raise an inference of

reasons for termination of Bourgeous's employment, but was insufficient to show the culpable mental state or malice necessary to support a claim for punitive damages. The trial court properly directed a verdict on this issue.

### IV.

We next address Bourgeous's contention that the trial court erred in granting a directed verdict on her breach of a covenant of good faith and fair dealing. "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Watson Truck & Supply Co. v. Males*, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990); *see* Restatement (Second) of Contracts § 205 (1981). We have declined to recognize a cause of action in an at-will contract for breach of an implied covenant of good faith and fair dealing. *See Melnick*, 106 N.M. at 730, 749 P.2d at 1109. We have also declined to "apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated written contract." *Id.* at 731, 749 P.2d at 1110. We have not addressed whether a cause of action exists for breach of an implied covenant of good faith and fair dealing in an employment contract other than an at-will relationship. Also, if this cause of action exists, is it a tort or a contract claim?

■ The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. *Watson*, 111 N.M. at 60, 801 P.2d at 642. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025, 1040 (1985) (en banc). This concept of the duty of good faith initially developed "in contract law as 'a kind of "safety valve" to which judges may turn to fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language' " *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 227, 765 P.2d 373, 389 (1988) (quoting Robert S. Summers, *The General Duty of*

*Good Faith—Its Recognition and Conceptualization,* 67 Cornell L.Rev. 810, 812 (1982)). There is no reason why this state should not recognize this cause of action as it applies to employment contracts that are not at-will employee arrangements. We should not "treat employment contracts as a special type of agreement in which the law refuses to imply the covenant of good faith and fair dealing that it implies in all other contracts." *Wagenseller,* 710 P.2d at 1040. Thus, the trial court erred in directing a verdict on the breach of the implied covenant of good faith and fair dealing. The inquiry focuses on the contract and what the parties agreed to. *Id.* The parties have the right to receive the benefits that were part of the employment agreement. *See id.*

 In *Wagenseller,* the Arizona Supreme Court held that the duty to not act in bad faith or deal unfairly becomes part of the contract and the remedy for its breach is on the contract itself. *Id.* at 1038. Other courts have allowed tort recovery for breach of implied covenant of good faith and fair dealing in actions brought on insurance contracts. *See Foley,* 765 P.2d at 390; *Wagenseller,* 710 P.2d at 1040. The strongest basis for permitting tort recovery for breach of the implied covenant is in the insurance context and "has been founded largely upon the existence of a 'special relationship' between insurer and insured." *Wagenseller,* 710 P.2d at 1040; *see generally Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 696, 620 P.2d 141, 146 (1979) (in bank), *appeal dismissed and cert. denied,* 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). "[T]he relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position." *Egan,* 620 P.2d at 146. This "special relationship" reasoning has been relied upon in breach of employment cases for permitting tort remedies in the breach of an implied covenant of good faith context. *See Foley,* 765 P.2d at 394–95. In *Foley,* the California Supreme Court declined to recognize a tort action for breach of the implied covenant, in part because it was not convinced that a " 'special relationship' analogous to that between insurer and insured should be deemed to exist in the usual employment relationship." *Id.* at 395. The court held that:

> the employment relationship is not sufficiently similar to that of insurer and insured to warrant judicial extension of the proposed additional tort remedies in view of the countervailing concerns about economic policy and stability, the traditional separation of tort and contract law, and finally, the numerous protections against improper termination already afforded employees.

*Id.* at 396. *Foley* disapproved a long line of cases in California that had previously permitted a cause of action seeking tort remedies for breach of the implied covenant of good faith and fair dealing. *See id.* at 411 n. 14 (Broussard, J., dissenting). We agree with the courts in *Foley* and *Wagenseller* and hold that tort remedies are not available for breach of the implied covenant in an employment contract. Because of our holding, and because a verdict was returned in favor of Bourgeous on her breach of contract claim and damages for that breach were awarded, we see no reason to retry the case on the issue of breach of the implied covenant of good faith and fair dealing. Bourgeous "cannot recover more than one compensatory-damage award." *McGinnis,* 110 N.M. at 8, 791 P.2d at 459. *See generally Hood v. Fulkerson,* 102 N.M. 677, 680, 699 P.2d 608, 611 (1985) ("Duplication of damages or double recovery for injuries received is not permissible.").

### V.

 Bourgeous next argues that the trial court improperly dismissed any claims for economic loss. "Damages must be proved with reasonable certainty." *Mascarenas v. Jaramillo,* 111 N.M. 410, 415, 806 P.2d 59, 64 (1991). Bourgeous had the burden of proving damages. *See Gulf Ref. Co. v. Etcheverry,* 85 N.M. 266, 267, 511 P.2d 752, 753 (Ct.App.), *cert. denied,* 85 N.M. 639, 515 P.2d 643 (1973). We are required to determine whether there was sufficient evidence to present the economic loss issue to the jury.

Bourgeous presented three different claims of economic loss. First, she sought to recover damages for failure to train and pro-

mote her to the position of medical consultant. Second, she sought economic loss for her resignations and terminations from three separate medical facilities. Last, she sought to recover lost income as a result of a back injury she sustained while lifting a patient at St. Vincent Hospital. We agree with the trial court that the economic damage claims were entirely too speculative to present to the jury. There was no evidence that she would have ever moved to the position of medical consultant at Horizon.

With respect to Bourgeous's claim for economic loss due to her emotional distress making her incapable of holding a job, Dr. Siegel presented evidence of emotional distress at trial. His testimony was based on numerous assumptions and did not, to a reasonable degree of medical probability, establish that Bourgeous's inability to hold subsequent employment was as a result of emotional distress sustained from being fired by Horizon. Finally, the back injury sustained while working at St. Vincent Hospital is too remote to be a reasonably foreseeable consequence of Bourgeous's termination by Horizon. *See, e.g., Solon v. WEK Drilling Co.,* 113 N.M. 566, 571, 829 P.2d 645, 650 (1992) (commenting on whether drilling company's failure to maintain a rig in a safe condition would cause harm to its employee's financially dependant parents). The trial court correctly directed a verdict on the economic loss because the evidence presented by Bourgeous did not establish a causal connection between the claim damages and the termination of her employment.

### VI.

Bourgeous next contends that the trial court erred when it declined to enter judgment on emotional distress damages. The jury had returned a verdict awarding emotional distress damages resulting from the breach of contract claim. The trial court ruled that damages for emotional distress are not recoverable for breach of contract and declined to enter judgment on the emotional distress damages.

In the absence of showing that the parties contemplated damages for emotional distress at the time the contract was made, such damages are not recoverable in a breach of employment contract case. *Silva*

*v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.,* 106 N.M. 19, 20, 738 P.2d 513, 514 (1987). It was Bourgeous's burden to prove that Horizon contemplated emotional distress at the time the employment contract was initially made. There was no evidence of a showing that the parties contemplated emotional distress damages and, therefore, the trial court was correct when it declined to enter judgment on the emotional distress damages.

### VII.

Bourgeous contends that the trial court erred in excluding evidence of an alleged romantic relationship between Rodriguez and a physical therapy aide, Goddard. The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *See Behrmann v. Phototron Corp.,* 110 N.M. 323, 327, 795 P.2d 1015, 1019 (1990). The trial court's determination will not be reversed except for an abuse of discretion. *Id.* The trial court excluded the evidence based on the conclusion that its probative value was outweighed by its prejudicial effect. The trial court permitted testimony at trial that Rodriguez and Goddard were friends. The probative value of this evidence, if any, was served by allowing evidence that a relationship existed. The additional information of the alleged romantic character of the relationship would not have increased the probative value of the evidence and was far outweighed by its prejudicial effect. Here, the court acted within its discretion in excluding evidence of an alleged romantic relationship.

Based on the foregoing, we affirm the trial court on all issues. Because damages on breach of contract have been awarded, we conclude that remanding for a new trial on the breach of covenant of good faith and fair dealing would not change the result.

The judgment is affirmed.

IT IS SO ORDERED.

MONTGOMERY, C.J., and FROST, J., concur.