2008-NMSC-040

188 P.3d 1200

Ken **SANDERS** and **P & D Services, Inc.**, a New Mexico corporation, Plaintiffs–Petitioners,

v.

**FEDEX GROUND PACKAGE SYSTEM, INC.**, Defendant–Respondent.

No. 30,278.

Supreme Court of New Mexico.

June 25, 2008.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Angelo J. Artuso, Timothy J. De Young, Emil J. Kiehne, Albuquerque, NM, for Petitioners.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Jocelyn C. Drennan, Albuquerque, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} The implied covenant of good faith and fair dealing protects the reasonable expectations of the parties to a contract arising from its terms. Here, the jury was allowed to determine those expectations based upon extrinsic evidence that clarified an express term of the contract. The jury then decided whether the parties exercised good faith and fair dealing in addressing those expectations, and from there the jury determined whether one party breached its contractual obligations to the other. Because the evidence supports the instructions given with regard to breach of contract and the implied covenant of good faith and fair dealing, we hold that the trial court committed no reversible error. The Court of Appeals having reached the opposite conclusion, we reverse and affirm the jury verdict.

## BACKGROUND

{2} In 1995, FedEx recruited Plaintiff Ken Sanders to be an independent contractor charged with making pick-ups and deliveries along a specified route. Sanders signed an integrated contract drafted by FedEx. Sanders asserts that he was told during initial negotiations that he would have the ability to grow his business by buying routes from other contractors as they became available. Relying on this understanding, Sanders tried unsuccessfully to buy other routes over FedEx's opposition, which forms the basis for this lawsuit. The contract does not contain any express provision granting a right to buy other routes.

{3} Sanders' original route was between Carlsbad and Artesia. In 1996, Sanders entered into an agreement with another independent contractor to purchase a route in Roswell. FedEx refused to allow Sanders to purchase the Roswell route even though he was qualified. Rather than allowing Sanders to own both routes, the FedEx terminal manager forced Sanders to give up his original route in exchange for the Roswell route. In 1998, Sanders negotiated with another independent contractor to purchase the Hobbs–Lovington route. Again, the terminal manager refused, opting instead to run the route himself until FedEx offered to sell it to another contractor.

{4} FedEx eventually chose not to renew Sanders' contract, and he sold his Roswell route. According to Sanders, FedEx made it impossible for the new owner to operate the route successfully. FedEx refused to get insurance coverage for the new owner's vans, FedEx failed to pay the new owner for more than a month, and FedEx refused to allow the new owner to hire her own drivers. Eventually, the new owner defaulted on her payment obligations to Sanders.

{5} Sanders filed suit against FedEx for breach of contract and tortious interference with contractual relations. Sanders presented five separate claims, including a claim arising from FedEx's refusal to allow Sanders to purchase the Hobbs–Lovington route. After a six-day trial, the jury returned a general verdict in Sanders' favor and awarded compensatory damages in the amount of $680,161.00.

{6} FedEx appealed the entire jury verdict to the Court of Appeals, but limited its argument to the claim regarding the Hobbs–Lovington route. *Sanders v. FedEx*, No. 25,577, slip op. at 2 (N.M.Ct.App. Jan. 19, 2007). FedEx argued that the jury was improperly instructed with respect to that claim, which was submitted to the jury on a theory of breach of contract as well as the implied covenant of good faith and fair dealing. *Id.* Specifically, FedEx pointed out that its written contract with Sanders made no express representation that Sanders would have a right to buy other routes, and therefore, the contract could not give rise to an implied covenant of good faith and fair dealing with respect to a nonexistent term of the contract. *Id.* Thus, argued FedEx, the implied covenant claim was not supported by the evidence. *Id.* The Court of Appeals

agreed and remanded for a new trial. *Id.* at 10.

## DISCUSSION

{7} New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract. *See Cont'l Potash, Inc. v. Freeport–McMoran, Inc.,* 115 N.M. 690, 706, 858 P.2d 66, 82 (1993) (citing *Watson Truck & Supply Co. v. Males,* 111 N.M. 57, 60, 801 P.2d 639, 642 (1990)). "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Id.* The implied covenant of good faith and fair dealing "requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." *Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 438, 872 P.2d 852, 856 (1994) (citation omitted).

{8} "The implied covenant is aimed at making effective the agreement's promises. Thus, it is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Azar v. Prudential Ins. Co. of Am.,* 2003–NMCA–062, ¶ 51, 133 N.M. 669, 68 P.3d 909. Importantly, the implied covenant of good faith and fair dealing cannot be used to overcome or negate an express term contained within a contract. *See, e.g., Cont'l Potash, Inc.,* 115 N.M. at 707, 858 P.2d at 83 ("[T]he trial court erred as a matter of law in finding and enforcing implied covenants against the defendants that were inconsistent with the provisions of the written agreements."); *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 731, 749 P.2d 1105, 1110 (1988) ("We align also with those courts that have refused to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract.").

{9} Courts have recognized that "evasion of the spirit of the bargain ... and interference with or failure to cooperate in the other party's performance" constitute bad faith and may "violate the obligation of good faith in performance." Restatement (Second) of Contracts § 205 cmt. d (1981). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party...." *Id.* cmt. a. As one commentator has noted, "[i]t is one function of the good-faith performance doctrine to enforce the spirit of deals, including their unspecified inner logic. Indeed, it has even been said that 'it is the potential for a lack of clarity and completeness that necessitates the implication of the good faith covenant in every contract.'" *Symposium: The Restatement (Second) of Contracts,* 67 Cornell L.Rev. 810, 827 (1982) (quoting Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv. L.Rev. 369, 380 n. 44 (1980)).

{10} In essence, then, the implied covenant of good faith and fair dealing helps insure that both parties receive the benefit of their respective bargains. The covenant acts to protect the parties to the contract by prohibiting one party from obstructing the other party's benefit, whether that benefit is express or implied. *See Bourgeous,* 117 N.M. at 438, 872 P.2d at 856 ("The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement."); *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.,* 1999–NMSC–006, ¶ 36, 127 N.M. 1, 976 P.2d 1 ("The right of Allsup's to receive a benefit of the agreement ... was injured by North River, whose duty to disclose was called for by the circumstances.").

## The Premise for the Implied Covenant in this Contract

{11} FedEx argues to this Court, as it did to the Court of Appeals, that the implied covenant of good faith and fair dealing must be tied to a specific clause or term of the contract. In other words, the argument goes, the implied covenant does not apply in the abstract; it is not merely an overarching promise of good behavior. Rather, the covenant implies a promise of good faith and

fairness in the performance of some specific contractual promise or representation. For example, for Sanders to have a claim for breach of the implied covenant based on FedEx having obstructed Sanders' efforts to buy other routes, then the contract must first explicitly provide Sanders with such a right. Because the contract contains no such express grant, then, according to FedEx, the covenant of good faith and fair dealing cannot be used to imply one. Thus, FedEx concludes that the district court committed error by giving the implied-covenant instruction. Consequently, the jury verdict must be set aside because it was based upon a theory unsupported by law or fact.

{12} The Court of Appeals agreed with FedEx. *Sanders*, No. 25,577, slip op. at 7. There being no express "right to buy" other routes in the contract, the Court then looked to whether the right could be inferred from the express "right to sell" that was provided to every contractor. *Id.* at 8. The Court of Appeals concluded, logically it would seem, that one cannot infer a "right to buy" from a "right to sell," much less a covenant of good faith and fair dealing with respect to any such right to buy. *Id.* To this Court, however, Sanders makes clear that he did not simply rely on the right to sell provision as the basis for his claim and questions why the Court of Appeals decided the case on the grounds that it did.

{13} Instead, Sanders primarily relies on his express contractual status as an "independent contractor." While conceding that the contract does not define the term "independent contractor," Sanders introduced evi-

dence at trial demonstrating that his status as an independent contractor was understood to mean that he had a right to grow his business by buying other routes as they became available, as long as he was qualified to operate them.[1] Once the term independent contractor is understood to include the right to purchase other routes, Sanders argues that FedEx must then deal with him fairly and in good faith in that capacity. Significantly, FedEx did not object to the admission of extrinsic evidence at trial nor to Sanders' use of it. Instead, FedEx relied on similar extrinsic evidence, in the form of testimony by FedEx terminal managers as to their own understanding of the contract. We now turn to that extrinsic evidence on which Sanders relies.

**Evidence Regarding the Meaning of Sanders' Independent Contractor Status**

{14} Sanders testified, and introduced the testimony of other contractors, in an effort to demonstrate that the parties intended the term "independent contractor" to have additional meaning in the context of this particular kind of contract with FedEx. As an independent contractor, Sanders owned his own business and had a proprietary interest in his routes and his customers. Under the contract, Sanders could only serve FedEx customers, and therefore, Sanders' ability to earn more money was directly linked to the number of customers he could acquire.

{15} According to Sanders, FedEx represented that his business would not be limited

---

1. FedEx argues to this Court that Sanders has changed his theory on appeal. FedEx contends that "Sanders did not as much hint to the Court of Appeals his current contention that the oral representations by FedEx were intended by the parties to define a material contract term." We disagree. In his Brief in Chief to the Court of Appeals, Sanders argued that the parties intended the term "independent contractor" to include the right to buy, and that FedEx breached the implied covenant of good faith and fair dealing with respect to that contractual term. Sanders framed the issue to the Court of Appeals as follows: "In this lawsuit, the relevant question is whether Ken Sanders had a reasonable expectation under his contract that he could grow his business by acquiring additional routes. The most obvious contract term supporting this rea-

sonable expectation is found in the contract's repeated assurances that Sanders was to be an independent contractor." Sanders further explained to the Court of Appeals that "because the intent of the parties and the purpose of the contract were to allow Sanders to operate as an independent contractor, including the right to grow his business by acquiring additional ... routes, the unreasonable withholding of consent to acquire such a route constitutes a breach of the implied covenant of good faith and fair dealing." Inexplicably, the Court of Appeals did not address this claim in its memorandum opinion. Because we conclude that Sanders has not changed his position on appeal, we reject FedEx's contention that this issue is improperly before this Court.

to existing customers, but instead that he would have the ability to develop and grow his business by purchasing new routes. The FedEx terminal manager "made it sound real attractive," telling Sanders that he would be his own boss, and that he could buy other routes as they became available. The terminal manager also told Sanders that, as one of the first independent contractors at the Roswell location, Sanders was "lucky and fortunate," because he "would ... have the first right to buy the new routes or the routes that other contractors might want to sell." Sanders signed the contract based on these discussions with the terminal manager. Thus, Sanders' testimony about the circumstances surrounding the execution of the contract with FedEx supports his understanding that one of the benefits of the contractual term "independent contractor" was the ability to buy other routes.

{16} Sanders' understanding was corroborated by other independent contractors who testified about their own conversations with terminal managers and their understanding that they would have the right to buy additional routes. One independent contractor testified that during initial training the El Paso terminal manager told him that existing drivers would be given the opportunity to purchase new routes as they were created. He was specifically told that other contractors already owned multiple routes.

{17} Sanders presented testimony about certain other contractual provisions that helped confirm his understanding that in this context the term "independent contractor" included the right to buy. For example, in the Background Statement, the contract "set[s] forth the mutual business objectives of the two parties," but "the manner and means of reaching these results are within the discretion of the Contractor, and no officer or employee of [FedEx] shall have the authority to impose any term or condition on Contractor or on Contractor's continued operation which is contrary to this understanding." The contract also states that independent contractors have a proprietary right in their routes.

{18} While Sanders acknowledges that the "right to sell" provision did not expressly provide him with a right to buy additional routes, Sanders did rely on that provision as further support for his understanding that, as long as he was qualified, FedEx agreed not to interfere with his purchase of other routes. In the assignment provisions, the contract provides that independent contractors have the right to assign their routes, and those provisions state that if the replacement contractor is "acceptable to [FedEx] as being *qualified* to provide the services of Contractor under this Agreement.... [FedEx] *shall* thereupon enter into a new agreement with Replacement Contractor on substantially the same terms and conditions as herein contained." (Emphasis added.)

{19} At trial, Sanders expressed the frustration he felt when the Roswell terminal manager refused to allow him to buy the Roswell route. Sanders testified that the current owner of the route "was an independent contractor, I was an independent contractor, we worked under pretty much the same contract as far as I knew, and [the current owner] had the right to sell it and ... I felt that I was certainly qualified to buy it." Sanders' testimony shows why he believed he was free to enter into an agreement with another contractor to buy that additional route, and also shows that he believed that unless he was unqualified, FedEx would approve the sale.

{20} Sanders' understanding that FedEx only retained veto power over a sale if the contractor was not in good standing was supported by the testimony of one of his fellow independent contractors. FedEx asked the other contractor where, in the assignment provisions, the contract provided the contractor with a right to buy. FedEx suggested that the assignment provisions did not refer to the right to buy additional routes but, instead, only referred to the right to sell a route. In response, the independent contractor stated: "Isn't it talking about both?"

{21} Significantly, we note the absence of any dispute as to Sanders' qualifications. The Court of Appeals observed that Sanders was "qualified to operate the route, and FedEx did not have a reasonable basis to disapprove of the sale." *Sanders,* No. 25,577, slip op. at 3. While not necessarily conceding the

point, FedEx candidly acknowledges in its briefing to this Court that this statement is supported by substantial evidence in the record.

{22} To be sure, FedEx rejected Sanders' view of the contract at trial and put on its own evidence. One terminal manager testified that he had not told any of the independent contractors that they would have the right to purchase a new route. Another terminal manager testified that there was nothing in the contract that provides an independent contractor with an absolute right to buy other routes. Additionally, one terminal manager testified that although Sanders had spoken generally about buying the Hobbs–Lovington route, the matter never progressed beyond preliminary discussions. The terminal manager conceded that under the contract he could not tell Sanders that he could not buy the route. The terminal manager did offer possible reasons why FedEx had not approved Sanders' attempt to purchase the Hobbs–Lovington route, such as a legitimate concern over distance.

{23} Evidently, based on its verdict, the jury chose not to give the FedEx testimony much weight or credence and, according to our standard of review, neither do we. Viewing the evidence in the light most favorable to the verdict, Sanders presented sufficient evidence from which the jury could reasonably infer that the parties intended the term "independent contractor" to include the right to buy other routes as they became available without unreasonable interference from FedEx. *Nava v. City of Santa Fe,* 2004–NMSC–039, ¶ 10, 136 N.M. 647, 103 P.3d 571 ("[A reviewing court] resolve[s] disputed facts in favor of the party prevailing below, indulging all reasonable inferences in favor of the verdict and disregarding contrary inferences, and ... do[es] not independently weigh conflicting evidence." (quoted authority omitted)). Additionally, a jury could reasonably find from the evidence that FedEx prohibited Sanders from purchasing the Hobbs–Lovington route, even though Sanders was qualified and in good standing, and that FedEx lacked any good-faith, legitimate reason to interfere. Accordingly, the evidence supports the jury's conclusion that FedEx did not act in the spirit of good faith and fair dealing with its independent contractor, and that FedEx breached its contract with Sanders and "injure[d] the rights of [Sanders] to receive the benefit of their agreement." *Bourgeous,* 117 N.M. at 438, 872 P.2d at 856.

## FedEx's Objections to Evidence Establishing the Understanding of the Parties

■ {24} FedEx protests that Sanders cannot be allowed to use this evidence explaining the term "independent contractor" because Sanders is trying to use extrinsic evidence to override or contradict an express term of the contract, which is not permitted under New Mexico law. *See C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 509, 817 P.2d 238, 243 (1991) ("The parol evidence rule is a rule of substantive law that bars admission of evidence extrinsic to the contract to contradict and perhaps even to supplement the writing."). Although we agree with the legal principle that express terms of a contract cannot be negated by extrinsic evidence, we are not persuaded that Sanders' argument contradicts that principle in the manner FedEx describes.

■ {25} Sanders used his own testimony and the testimony of other, similarly situated contractors not to negate or undercut an express term of the contract, but to aid the jury in understanding the meaning that these particular parties ascribed to the term "independent contractor." Sanders was doing nothing more than providing context by showing the circumstances surrounding the making of the contract. *See Mark V, Inc. v. Mellekas,* 114 N.M. 778, 782, 845 P.2d 1232,-1236 (1993) ("In order to determine the meaning of the ambiguous terms, the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent."); *C.R. Anthony Co.,* 112 N.M. at 509, 817 P.2d at 243 ("It is important to bear in mind that the meaning the court seeks to determine is the meaning one party (or both parties, as the circumstances may require) attached to a particular term or expression at the time the parties agreed to those provisions.").

{26} Sanders used extrinsic evidence to give meaning to the term "independent contractor," rather than contradict or override that term, and therefore, that evidence was properly before the jury and subject to use in this manner. *See Seidenberg v. Summit Bank,* 348 N.J.Super. 243, 791 A.2d 1068, 1077 (App.Div.2002) ("To determine what is considered a good faith performance, the court must consider the expectations of the parties and the purposes for which the contract was made. It would be difficult, if not impossible, to make that determination without considering evidence outside the written memorialization of the parties' agreement."). And, as noted above, FedEx never objected to the admission of this evidence at trial.

{27} Because the implied covenant of good faith and fair dealing protects the reasonable expectations of the parties arising from an agreement, the covenant requires parties to act in good faith with respect to both ambiguous and unambiguous terms. We reiterate that the covenant cannot be used to override express terms of the contract. However, in this case, we agree with Sanders that extrinsic evidence was properly used to establish the parties' intent as well as their expectations regarding the benefits that would flow from the agreement, and more specifically from the term "independent contractor." As we previously stated in *Continental Potash, Inc.,* 115 N.M. at 704, 858 P.2d at 80, "[w]hen it is clear ... from the relevant parts of the contract taken together and considered with the facts and circumstances surrounding the execution of the agreement, that the obligation in question was within the contemplation of the parties or was necessary to effect their intention, then such obligation may be implied and enforced."

{28} In this case, Sanders grounds his application of the implied covenant upon an express term of the contract, independent contractor. Thus, we are satisfied that this case does not expand our prior understandings of when the implied covenant can be used as a basis for contractual liability. We do not intend any such expansion by virtue of this Opinion. Specifically, we need not decide whether and to what extent liability can be based on the implied covenant in the absence of an express term, because such a term is present here, as appropriately clarified by extrinsic evidence.

{29} We particularly reject FedEx's reliance upon two recent Court of Appeals opinions, *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.,* 2005–NMCA–051, ¶ 44, 137 N.M. 524, 113 P.3d 347, and *WXI/Z Southwest Malls v. Mueller,* 2005–NMCA–046, ¶¶ 22, 27, 137 N.M. 343, 110 P.3d 1080. Both opinions stand for the unremarkable proposition that the implied covenant cannot be used to impose a contractual obligation that would contradict a clear, unambiguous and express term of the contract. And, as FedEx correctly points out, both cases also hold that a court will not apply the implied covenant of good faith and fair dealing to add omitted terms to a contract when those terms are not necessary to effectuate the parties' agreement. However, the holdings of these two opinions are inapposite. Significant to our holding here, in neither case did the proponent of the implied covenant first introduce evidence that modified or clarified an express contractual term and then use the implied covenant of good faith and fair dealing to amplify that term. Sanders, unlike the plaintiffs in *Santa Fe Custom Shutters* and *WXI/Z Southwest Malls,* did introduce testimony that he and FedEx discussed the meaning of the term "independent contractor" and their understanding that the term included the right to buy additional routes. *See Santa Fe Custom Shutters,* 2005–NMCA–051, ¶ 40, 137 N.M. 524, 113 P.3d 347 ("The district court found that: (1) [the parties] did not discuss or agree upon the duration of the contract, and (2) [the parties] did not discuss or agree upon a reasonable time for notice of termination."); *WXI/Z Southwest Malls Real Estate Liab. Co.,* 2005–NMCA–046, ¶ 22, 137 N.M. 343, 110 P.3d 1080 ("The Ritters were free to insist on a notice requirement or any other condition or limitation in their guaranty, but having failed to do so, this Court will not write such a condition in after the fact."). Thus, our hold-

ing today keeps faith with our precedent.[2]

## The Court's Jury Instruction Did Not Usurp the Role of the Jury to Decide Whether Sanders in Fact Had a Right to Purchase New Routes Under the Contract

{30} Given evidence in support of an interpretation of the contract that would grant Sanders a right to buy, it was still for the jury to decide the facts. In this case, then, the jury was called upon to determine what the reasonable expectations of the parties actually were, and whether FedEx breached those expectations. On appeal, FedEx argues that the trial court did not allow the jury to decide whether the term "independent contractor" actually implied the right to buy additional routes. FedEx posits that "[i]t was the trial court that decided, over FedEx's objection, that Sanders had a right under his contract to purchase routes...." As a result, the Hobbs–Lovington instruction, argues FedEx, "assumes that the contract gave Sanders a right to acquire routes," as opposed to asking the jury to so find. For the following reasons we are not persuaded, and instead conclude that FedEx takes an unreasonably cramped view of the instructions actually given to the jury.

{31} For our review, we include the language of the Hobbs–Lovington route instruction:

As another and separate claim for breach of contract on the part of FedEx, Ken Sanders claims and has the burden of proving each of the following contentions:

In 1998, Ken Sanders had an enforceable agreement with Larry Sanchez to purchase Sanchez's then existing Hobbs/Lovington route; and

FedEx breached its contract with Ken Sanders by unreasonably refusing to approve the proposed transfer of the then existing Hobbs/Lovington route from Larry Sanchez to Ken Sanders.

Ken Sanders also contends and has the burden of proving that such breach of contract was a cause of damages.

Defendant ... denies the contention of Plaintiffs' claim for breach of contract.

{32} We do not consider any one instruction in a vacuum; instead we view all instructions as a whole and consider them collective impact on the jury. Considered as a whole, the instructions given in this case demonstrate that the jury was asked to determine whether the term "independent contractor" included, by implication, the right to purchase other routes. In the instruction for the Hobbs–Lovington route, the jury was told that Sanders had the burden of proving that "FedEx breached its contract with ... Sanders by unreasonably refusing to approve the proposed transfer of the then existing Hobbs/Lovington route." With respect to breach, the jury was instructed that "[a] breach of contract occurs when a party to the contract fails to perform any contractual duty of immediate performance or violates an obligation, engagement, or duty and that breach is material." In the general instruction regarding good faith and fair dealing, the jury was instructed that "[w]hether there has been a breach of the covenant of good faith and fair dealing is a factual inquiry that focuses on the contract and what the parties agreed to."

{33} Thus, to find that FedEx breached the contract, the jury was instructed to consider the contract, and the parties' agreements surrounding the contract. The jury could only have found that FedEx breached the contract if the jury first found that FedEx had a duty under the contract to allow the proposed transfer, or reasonably oppose it. FedEx argued strenuously at trial that FedEx had no such obligation under the

2. FedEx relies on the integration clause contained in the contract as further support for its argument that the contract could not be modified orally. While the parol evidence rule "precludes the admission of prior negotiations or extrinsic evidence offered to contradict or vary the terms of a complete, integrated, written agreement[,] ... [e]vidence extrinsic to a written contract is properly admitted to determine the circumstances under which the parties contracted and the purpose of the contract." *Empire West Cos. v. Albuquerque Testing Labs., Inc.*, 110 N.M. 790, 794, 800 P.2d 725, 729 (1990) (citation and quoted authority omitted). Because Sanders sought to introduce the testimony to show the circumstances under which the parties contracted, the contract's integration clause does not act to bar the admission of the evidence.

contract for all the reasons previously discussed, and Sanders argued from the evidence in favor of such a duty under the contract. The court did not foreclose this debate or foretell its resolution.

{34} We acknowledge that the Hobbs–Lovington jury instruction could have been more precisely drafted. In hindsight it might have been preferable to expressly instruct the jury to decide whether Sanders had a right to purchase additional routes arising from the term "independent contractor," as FedEx now complains. The instructions as a whole, however, were adequate. The jury was able to consider both the contract and the extrinsic evidence to determine whether a contractual right existed.

{35} More to the point, having reviewed the record, it is not apparent to this Court that FedEx ever objected to the Hobbs–Lovington instruction on the same ground that it now argues; namely, that the judge impermissibly relieved the jury of its fact-finding responsibility. FedEx does not point this Court to any specific page in the transcript where it made such an objection, and based on our independent review of the record, we conclude that FedEx did not alert the trial court at a time when any ambiguity in the instruction could have been corrected.[3]

## CONCLUSION

{36} We reverse the Court of Appeals and affirm the jury verdict in Sanders' favor.

{37} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES and CHARLES W. DANIELS, Justices.

---

**3.** While FedEx did object to the initial, proposed jury instruction, it gave as a reason only that the instruction's "theory [was] okay, just a little bit of the wording [needs to be changed]." FedEx also objected to the instruction because the contract had a choice-of-law provision, providing that Pennsylvania law applied, and FedEx argued that Pennsylvania does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing. However, this objection does not form the basis for FedEx's appeal to this Court.